(614 P.2d 998)
No. 50,831

STATE OF KANSAS, *Appellee,* v. JAMES ALBERT SANDERS, *Appellant.*

Opinion filed July 18, 1980.

*Michael J. Peterson,* of Kansas City, for appellant.

*Thomas L. Boeding,* assistant district attorney; *Nick A. Tomasic,* district attorney; and *Robert T. Stephan,* attorney general, for appellee.

Before MEYER, P.J., REES and PARKS, JJ.

MEYER, J.: James Albert Sanders (appellant) appeals from a conviction of unlawful possession of a firearm by a felon within five years of release from imprisonment for a felony conviction, K.S.A. 21-4204(b), claiming that the firearm introduced into evidence was the product of an unreasonable search and seizure.

On August 7, 1977, Officer Holt of the Wyandotte County Sheriff's Office observed a 1977 Grand Prix traveling at excessive speed. He gave chase and stopped the car. Appellant was the driver of the automobile and with him was a passenger, Mrs. Lena Mae Ousley. The car was owned by a Mr. Bell who had loaned it to Mrs. Ousley.

As Officer Holt approached the driver's side, he saw the appellant make a movement consistent with a person removing an object from the midsection of his body and placing it on the floorboard of the car. Another automobile pulled in behind Officer Holt's vehicle and the driver exited his car at the same time appellant was getting out of the Grand Prix. The passenger remained in the automobile. Officer Holt ordered appellant and the third party to stand behind the Grand Prix and in the headlights of the police vehicle.

A short while later, Officer Knapp arrived as a back up. At this point, Officer Holt obtained the appellant's driver's license and relayed the identity of the appellant to the dispatcher. The dispatcher advised Officer Holt that appellant "had been a convicted felon in the penitentiary within the last five years, that the subject

had been known to carry firearms, had been known to assault police officers and he had quite an extensive record."

Appellant stated he didn't know to whom the car belonged. The officer ran a check on the tag and discovered it was a Mr. Bell's. There was no report of the car having been stolen.

Officer Knapp then checked the car at Officer Holt's request. Knapp felt under the seat of the driver's side and found nothing. He then went to the passenger side of the car and ordered the passenger out of the car, aiding her by taking hold of her arm. He then reached under the passenger seat and seized a firearm. The passenger claimed the firearm belonged to her. The officer did not conduct any further search of the car after recovering the firearm.

Officer Holt removed six bullets from the chamber of the firearm. He then checked with the dispatcher to determine if the gun was stolen. It was not. At this point, the officer conducted a pat-down search of the appellant and took him into custody. Appellant was booked into jail for eluding a police officer and speeding.

Following an investigation which revealed that the firearm had been purchased by appellant in July 1977, and that subsequent to the seizure of that firearm, appellant purchased an identical gun from the same place, an information was filed charging the appellant with violation of K.S.A. 21-4204 for possessing the weapon taken from the Grand Prix. The speeding and eluding a police officer charges were dismissed.

Appellant filed a motion to suppress the gun on the ground that the gun was a product of an unreasonable search and seizure. Said motion was heard and denied. Appellant's first trial resulted in a mistrial as the jury was unable to reach a unanimous verdict. At the second trial, the trial court reviewed the record of the hearing on the motion to suppress and held in accordance with the first judge that the seizure of the gun was reasonable to protect the police officers.

The jury found appellant guilty as charged and he appeals from his conviction.

Appellant's main claim of error is that the search was unreasonable and in violation of his Fourth Amendment rights under the United States Constitution and in violation of Section 15 of the Bill of Rights of the Kansas Constitution. On appeal, the State raises the issue of whether appellant had standing to challenge

the search and seizure. It is not clear from the record whether the State raised the issue of standing at the trial level because we do not have, as part of the record, a transcript of the hearing from the first trial on the motion to suppress. The State does raise the issue on appeal and we address it at the outset.

"The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois,* 439 U.S. 128, 130-131, n. 1, 58 L.Ed.2d 387, 99 S.Ct. 421, *reh. denied* 439 U.S. 1122 (1978).

The State claims that the appellant lacks the requisite interest to raise a Fourth Amendment claim because the "automatic standing" doctrine of *Jones v. United States,* 362 U.S. 257, 4 L.Ed.2d 697, 80 S.Ct. 725 (1960), is no longer valid, and he has failed to show a proprietary interest in the automobile which would give him a reasonable expectation of privacy in the car or its contents.

"The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman v. United States,* 394 U.S. 165, 171-2, 22 L.Ed.2d 176, 89 S.Ct. 961, *reh. denied* 394 U.S. 939 (1969).

The automatic standing rule of *Jones* was overruled by the recent U.S. Supreme Court decisions of *United States v. Salvucci,* 448 U.S. 83, 65 L.Ed.2d 619, 100 S.Ct. 2547 (1980), and *Rawlings v. Kentucky,* 448 U.S. 98, 65 L.Ed.2d 633, 100 S.Ct. 2556 (1980). This exception previously conferred standing on an individual to contest the legality of a search without establishing a legitimate expectation of privacy where he was charged with an offense, one element of which was possession of an item seized at the time of the search.

The rationale for granting automatic standing in cases where mere possession of the article seized is a crime was twofold. First was the unfairness in requiring a criminal defendant to admit possession at a hearing prior to trial in order to secure standing to challenge the search and seizure. At the time of *Jones,* said admission could be used at trial against the defendant. Second, the Government would obtain a conviction through asserting contradictory positions; claiming on the one hand that the defendant possessed the goods for purposes of criminal liability, while at the same time arguing that he did not possess them for the purposes of claiming Fourth Amendment protection.

The court reasoned that since *Jones* was decided, these two justifications for the rule have been substantially eroded. The decision of *Simmons v. United States,* 390 U.S. 377, 19 L.Ed.2d 1247, 88 S.Ct. 967 (1968), eliminated the first "dilemma" by holding that testimony given by a defendant in support of a motion to suppress cannot be admitted as evidence of his guilt at trial. As to the second rationale for the *Jones* holding, the court ruled in *Rawlings* that a claim of possession of the seized item is not sufficient, by itself, to confer standing on a defendant to challenge a search; rather, he must show a reasonable expectation of privacy in the area searched. The court, in *Salvucci,* therefore, concluded that the government is not relying on contradictory positions to obtain its conviction. It is thus held that "defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated." 448 U.S. at 83.

Our state court and the 10th Circuit have, heretofore, recognized the *Jones* automatic standing, even after the *Simmons* decision. See *United States v. Rios,* 611 F.2d 1335, 1345, n. 18 (10th Cir. 1979). We do not reach the issue of whether the *Salvucci* and *Rawlings* rulings can be applied retroactively to deprive this appellant of "automatic standing." Here the appellant has an alternative basis for asserting his Fourth Amendment rights in that he has a reasonable expectation of privacy in the place searched.

Whether a defendant has a sufficient expectation of privacy in an automobile to assert Fourth Amendment rights has been discussed on numerous occasions. In *State v. Roberts,* 210 Kan. 786, 504 P.2d 242 (1972), *cert. denied* 414 U.S. 832 (1973), and *State v. Edwards,* 197 Kan. 146, 415 P.2d 231 (1966), defendants who were passengers in automobiles driven by the owner were held not to have a sufficient possessory interest in the automobile to warrant standing to raise the issue of unreasonable search and seizure of evidence.

"[O]ne who is neither an owner nor in possession of an automobile lacks standing to invoke the constitutional guarantee of immunity from unreasonable search and seizure. [Citations omitted.]" 197 Kan. at 148.

In *State v. Heath,* 222 Kan. 50, 563 P.2d 418 (1977), the driver of the car searched was in possession of the automobile with the consent of its owner. It was held in that case that the defendant who was a passenger in the car did not have standing.

Recent cases which have held that a passenger in an automobile which was the subject of the search and seizure lacked standing are *Delaware v. Prouse,* 440 U.S. 648, 59 L.Ed.2d 660, 99 S.Ct. 1391 (1979), and *Rakas v. Illinois,* 439 U.S. 128. The court in *Rakas,* following the reasoning of *Katz v. United States,* 389 U.S. 347, 19 L.Ed.2d 576, 88 S.Ct. 507 (1967), stated its rationale as follows:

"[C]apacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." 439 U.S. at 143.

The defendants as passengers were held not to have shown that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car. This situation was distinguished from *Jones v. United States,* 362 U.S. 257, wherein defendant not only had permission to use the apartment of a friend, but had a key to the apartment. Except with respect to his friend, the defendant in *Jones* had complete dominion and control over the apartment and could exclude others. See *Rakas,* 439 U.S. at 149.

In the case at bar, the automobile which appellant was driving was loaned to the passenger of the automobile. The question is whether the fact that the person who had possession of the car with permission of the owner handed the keys to a third person would thereby convey to that third person a sufficient expectation of privacy to invoke standing. The State argues that if anyone has a legitimate expectation of privacy it was the person to whom the car was loaned and not the appellant.

In *State v. Boster,* 217 Kan. 618, Syl. ¶ 2, 539 P.2d 294 (1975), it was held that:

"One who is driving a vehicle at the time of his arrest, with the apparent consent of the owner, has a sufficient possessory interest in the vehicle to assert his constitutional rights against unreasonable search and seizure."

While appellant in the instant case was not the owner of the automobile, it has never been alleged that the lady friend of appellant lacked proper permission to drive the same, or that she lacked the requisite ability to allow the appellant to drive the car. Appellant, thus, was more than a passenger. He possessed the keys to the car and was driving the same. While it is probable that

the lady who allowed appellant to drive could have revoked her permission to do so, and while unquestionably the owner of the car could have deprived appellant of his possession thereof, it is not contended that they had done so at the time of the appellant's apprehension. We conclude that, at least insofar as the criminal law is concerned, the appellant stood in the place of the owner, and was entitled to the same expectation of privacy as would have extended to the owner at such time and place. As in *Jones,* appellant had control over the automobile and the ability to exclude anyone except the owner or Mrs. Ousley.

Having concluded appellant had a privacy interest in the place searched, we must decide whether this search and seizure was unreasonable and that thus the gun should have been suppressed under the exclusionary rule of *Mapp v. Ohio,* 367 U.S. 643, 6 L.Ed.2d 1081, 81 S.Ct. 1684, *reh. denied* 368 U.S. 871 (1961).

As a general rule, searches and seizures without a warrant are unreasonable.

" '[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions' . . . [which are] 'jealously and carefully drawn,' and there must be a 'showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.' '[T]he burden is on those seeking the exemption to show the need for it.' " *Coolidge v. New Hampshire,* 403 U.S. 443, 454-5, 29 L.Ed.2d 564, 91 S.Ct. 2022, *reh. denied* 404 U.S. 874 (1971).

The five basic exceptions to the requirement for a search warrant are: (1) consent; (2) in hot pursuit; (3) incident to a lawful arrest; (4) stop and frisk; and (5) with probable cause to search but with exigent circumstances.

Since at the time of appellant's apprehension he did not consent and since the officers did not come within the "in hot pursuit" exception, it remains for us to decide whether any of the other three exceptions just mentioned would be applicable.

As to the "search incident to a lawful arrest" exception, it is to be noted that the appellant, prior to the finding of the revolver involved in the case, was arrested for speeding, but not for possession of a firearm.

The search incident to arrest exception is defined in K.S.A. 22-2501:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of

"(*a*) Protecting the officer from attack;
"(*b*) Preventing the person from escaping; or
"(*c*) Discovering the fruits, instrumentalities, or evidence of the crime."

The threshold question is whether this situation constitutes a search incident to arrest since the search was conducted prior to the arrest.

"It is fundamental that a search incidental to an arrest may not precede the arrest where the evidence discovered during the search forms the basis of probable cause for the arrest. (*Sibron v. New York,* 392 U.S. 40, 20 L.Ed.2d 917, 88 S.Ct. 1889.)

. . . .

"Where there is probable cause for an arrest, a search of an accused's person incidental to arrest may either precede or follow the formal arrest if the events closely follow. [Citations omitted.]
"The justification for such an intrusion is the probable cause to believe that the individual has committed a crime and the need for immediate action to prevent the use of weapons against the arresting officer or destruction of evidence of the crime. (*Chimel v. California,* 395 U.S. 752, 23 L.Ed.2d 685, 89 S.Ct. 2034.) Postponement of the further intrusion of arrest does not remove the justification for the search and in no way prejudices the individual's Fourth Amendment rights. (*United States v. Riggs,* [474 F.2d 699 (2nd Cir.), *cert. denied* 414 U.S. 820 (1973).])" *State v. Barnes,* 220 Kan. 25, 28-29, 551 P.2d 815 (1976).

In the case at bar there was probable cause for the arrest as the appellant was speeding. The search is sufficiently close to the arrest to constitute a search incident to arrest, provided the search was justified.

The second question is whether the search was sufficiently limited in scope and thus justified. Under the guidelines of *Chimel v. California,* 395 U.S. 752, 23 L.Ed.2d 685, 89 S.Ct. 2034, *reh. denied* 396 U.S. 869 (1969), a search incident to arrest is limited to the arrestee's person and the area within his immediate control—construed to mean the area from which an arrestee might gain possession of a weapon or destructible evidence. Searches *of the person* may be made incident to arrest on traffic charges in order to disarm the suspect to take him into custody. *United States v. Robinson,* 414 U.S. 218, 38 L.Ed.2d 427, 94 S.Ct. 467 (1973); *Gustafson v. Florida,* 414 U.S. 260, 38 L.Ed.2d 456, 94 S.Ct. 488 (1973).

The justification for the search without a warrant is the officer's immediate need to protect himself or preserve evidence. Here, the appellant, as noted above, had been removed from the car, as had

his passenger, before the gun was found. Furthermore, the officers had determined that the car was to be impounded and had so informed appellant; this was also before the gun was found. We conclude the search was not sufficiently limited in scope as it was outside the area within the arrestee's immediate control.

The State alleges the stop and frisk rule enunciated in *Terry v. Ohio,* 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968), was sufficient to give them the right to search the appellant's automobile.

Under *Terry v. Ohio,* the officer has limited authority to make a limited search for weapons of a person temporarily detained where the officer reasonably suspects his personal safety requires it. This rule was codified in K.S.A. 22-2402(2):

"When a law enforcement officer has stopped a person for questioning pursuant to this section and reasonably suspects that his personal safety requires it, he may search such person for firearms or other dangerous weapons."

In *Terry,* the court was concerned with striking a balance between the safeguarding of a person's right to be free from unreasonable searches and seizures, and protecting a police officer from bodily harm, and preventing and deterring crime where there is less than probable cause to make an arrest. The court struck that balance by indicating that the Fourth Amendment would "permit a reasonable search for weapons for the protection of the police officer, when he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." 392 U.S. at 27.

The permissible scope of such a search was stated as follows:

"A search for weapons in the absence of probable cause to arrest . . . must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. [Citation omitted.] Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a 'full' search, even though it remains a serious intrusion." 392 U.S. at 25-26.

Another case using the Terry rationale was *Adams v. Williams,* 407 U.S. 143, 32 L.Ed.2d 612, 92 S.Ct. 1921 (1972), in which an officer reached into a car and grabbed a gun from defendant's belt

when he was sitting in his car. The officer only reached to the spot where the gun was thought to be hidden based upon earlier information given by an informant. The policeman's action was held to be a limited intrusion designed to insure his safety and therefore reasonable.

Two state cases have extended the stop and frisk rationale to justify a limited search of an automobile under circumstances similar to the case at bar.

In *People v. Rosales,* 87 Mich. App. 185, 274 N.W.2d 13 (1978), the police officer approached defendant's van; he saw defendant make a quick movement down and forward as if placing something between and to the rear of the seats. Defendant alighted from the van and went to stand with another officer who had just arrived. The officer observed a bulge under the carpet in the area where defendant had just reached. He reached to the area and removed a pistol. Defendant's companion, who had remained in the van, was then removed and a search revealed that he had a loaded revolver in his waistband. The removal of the weapon from the van was held to be justifiable as a limited intrusive act for the officer's safety, under the *Terry v. Ohio* rationale.

In *State v. Smith,* 56 Ohio St. 2d 405, 384 N.E.2d 280 (1978), an officer stopped an individual for a traffic violation and observed the defendant push something under the front driver's side of the seat with his right hand. The officer ordered the defendant out of the automobile, told him to move back to the second door of the station wagon, and to place his hands on top of the vehicle. The officer positioned himself so that he could watch defendant and crouched down to survey the area where defendant had reached. The officer observed the barrel portion of a weapon beneath the front driver's seat and recovered the weapon.

The court applied the rationale of *Terry v. Ohio* and *Adams v. Williams* to hold the search reasonable, stating:

"Although *Terry* and *Adams* involved intrusions of one's person, the policy which justified an incidental and limited search of the person likewise permits an officer to conduct a restricted protective search of an area where suspicious conduct is observed." 56 Ohio St. 2d at 408.

Assuming, without deciding, that we would extend the rationale of *Terry* to an automobile search under circumstances like these cases, we find the case at bar to be distinguishable. Here the appellant had previously alighted from the automobile and was

under the control of another police officer by the time the search was conducted. Further, his passenger was also removed from the automobile before the gun was recovered. It is noted that the State contends the removal of the lady passenger, and the finding of the gun, were part and parcel of the same act. In this regard it is noted that the officer first asked the lady to alight from the auto, and when she appeared reluctant to do so, the officer took her by the arm in order to assist her from the vehicle. There is no contention that she struggled with him, or otherwise resisted leaving the automobile, and it is apparent the officer assisted her from the car and then reached beneath the car's right hand front seat and found the weapon. It does not seem believable to us that he could have been assisting her from the car by holding her right arm, while at the same time having his hand under the right front seat. Thus, at the time the gun was searched for, and found, the car had no occupant within it; it had been declared to be impounded; the officers had no reason to fear for their safety. A pat-down search of the lady revealed no weapons. Further, appellant was not even given a pat-down search until about 15 minutes later, immediately prior to taking him into custody.

A valid search under *Terry v. Ohio* must be based on a reasonable belief that the person is armed and presently dangerous. See *Ybarra v. Illinois,* 444 U.S. 85, 62 L.Ed.2d 238, 100 S.Ct. 338 (1979). We conclude the search was not justifiable under *Terry v. Ohio.*

Probable cause to search, coupled with exigent circumstances, will also validate a search without a warrant.

The probable cause exception was recognized in *Carroll v. United States,* 267 U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280 (1925). The right to search and the validity of the seizure under the probable cause justification for search are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend the law.

Under this rule, "if the search and seizure without a warrant are made upon probable cause . . . reasonably arising out of circumstances known to the seizing officer, that an automobile . . . contains that which by law is subject to seizure and destruction, the search and seizure are valid." 267 U.S. at 149.

Exigent circumstances, making it impracticable to obtain a

warrant, are necessary in order to justify a probable cause automobile search. *Coolidge v. New Hampshire,* 403 U.S. 443.

*State v. Hays,* 221 Kan. 126, 128, 557 P.2d 1275 (1976), sets out the definition of probable cause as follows:

" 'Probable cause, such as may justify an arrest or a search and seizure without warrant, is a reasonable ground for belief of guilt; and this means less than evidence which would justify condemnation or conviction; probable cause exists where the facts and circumstances within the knowledge of the officer making the arrest or search, and of which he had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.' " (Citing from *State v. Morin,* 217 Kan. 646, Syl. ¶ 1, 538 P.2d 684 [1975].)

Here, the appellant was apprehended and charged with traffic violations, and there was no probable cause for an officer to believe that because appellant was speeding, he also was carrying a gun.

The facts leading to the suspicion by the police officer that appellant had placed something under the seat would not rise to the level of probable cause to believe that he illegally possessed a gun.

We conclude that the search of the automobile for the weapon was unreasonable and in violation of the Fourth Amendment of the United States Constitution and Section 15 of the Kansas Constitution's Bill of Rights. The gun, therefore, should have been excluded from evidence under the exclusionary rule of *Mapp v. Ohio,* 367 U.S. 643.

Furthermore, we conclude that the error was not harmless beyond a reasonable doubt and that the conviction should be reversed and remanded for a new trial without the objectionable evidence.

Because of our disposition in this case, we find it unnecessary to consider the other points of error raised by the appellant.

Reversed and remanded.