**STATE of Utah, Plaintiff and Respondent,**

v.

**Leonard SCOTT, Defendant and Appellant.**

**No. 860284.**

Supreme Court of Utah.

Jan. 15, 1987.

David L. Mower, Richfield, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Kimberly K. Hornak, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

PER CURIAM:

Defendant was convicted by a jury of distribution of a controlled substance for value, a third degree felony under U.C.A., 1953, § 58–37–8(1)(a)(ii) and –8(1)(b)(ii) (Repl.1986).

The facts presented at trial were sketchy. An informant was wired with a tape recorder by the police and sent to defendant's home, where he encountered defendant, his family, and four other men. Two police officers listened to the conversation between the informant and people at defendant's home. According to the transcribed tape, the informant asked someone other than defendant if they had "any weed." Defendant entered the conversation, stating that he had one forty-dollar bag "behind the church in the bushes." Some exchanges later, defendant announced that all he had was a thirty-dollar bag. Another unidentified voice said he had only two dollars, presumably in change. The informant returned to the police officers with a bag of marijuana and ten dollars change.

No one at trial could testify as to who handed over the marijuana and who took the money at defendant's home. The informant did not testify at trial. The tape had been destroyed, and in its stead a transcript of the conversation was introduced at trial. In his closing argument, the prosecutor reminded the jury that the sale happened in defendant's home and educated them on the meaning of jury instruction No. 22, instructing the jury on the crime of aiding and abetting. "What that means, ladies and gentlemen, is if all Mr. Scott did was handle the negotiations and how much money was going to be paid and somebody else handed it over, Leonard Scott intentionally aided someone in the commission of that offense, and we know that happened." The instruction on aiding and abetting was given to the jury over defendant's objection.

Defendant claims that the jury was improperly instructed on the offense of aiding and abetting which was defined for it in language taken verbatim from section 76–2–202 of the criminal code as follows:

> Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands,

encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct.

Defendant relies on our decision in *State v. Hicken,* 659 P.2d 1038 (Utah 1983), in arguing that section 58–37–19 [1] of the Controlled Substances Act (the Act) and section 76–1–103(1) [2] of the criminal code, read in harmony, foreclosed the State from using law from outside the Act in presenting its case to the jury. He maintains that the State should have amended the information against him, as permitted by Rule 4(d) of the Utah Rules of Criminal Procedure, to include an instruction on *arranging* for the sale of marijuana, an offense sanctioned by section 58–37–8(1)(a)(iv) of the Act.[3] The State invokes our decision in *State v. Jeppson,* 546 P.2d 894 (Utah 1976), and our analysis of that case provided in *Hicken* in arguing that for a variety of circumstances involving violations of the Act, section 76–2–202 concepts of aiding and abetting remain applicable. For the reasons stated below, we agree with defendant and reverse his conviction.

In *State v. Hicken,* 659 P.2d at 1039, we pointed out that the legislature intended the Act to govern all offenses committed under, and related to substances controlled by, that Act, citing section 58–37–19. We also referred to the language found in section 76–1–103(1) that provisions of the criminal code were inapplicable to offenses defined outside the criminal code where otherwise specifically provided for. Finally, we relied upon our earlier decision in *Helmuth v. Morris,* 598 P.2d 333 (Utah 1979), which reflected the scope of those two statutes. *Helmuth* and *Hicken* present opposing sides of the same argument. In *Helmuth,* the plaintiff had been convicted under section 58–37–8(4)(a)(iii) for forging a prescription for a controlled substance. He argued that he should have been convicted under section 76–6–501 of the criminal code, which deals with forgery of written instruments in general. We rejected his argument on the ground that the Act applied more specifically to his offense and that it therefore took precedence over the criminal code provision. In *Hicken,* the State argued that it had properly charged the defendant with aiding and abetting after the trial court dismissed its case against him for failure to charge the specific offense under the Act. In the instant case, the State was successful in having the trial court instruct the jury on aiding and abetting, and this time the defendant appeals on the ground that he should have been charged under the Act. There are no exceptions here that would persuade us to deviate from our consistent interpretation of the law in *Hicken* and *Helmuth.*

Nonetheless, the State reminds us that this Court also decided *State v. Jeppson,* in which the trial court had instructed the jury under two provisions of the Act (dealing with distribution and making a home available for distribution of controlled substances), as well as under the aiding and abetting statute. The defendant in that case had had discussions with the undercover agent before the sale of marijuana, whereupon the delivery of the package and the demand for money was made by a third person, but for some unknown reason the agent handed the money to the defendant.

1. Section 58–37–19:

   It is the purpose of this act to regulate and control the substances designated within § 58–37–4, and whenever the requirements prescribed, the offenses defined or the penalties imposed relating to substances controlled by this act shall be or appear to be in conflict with Title 58, Chapter 17 [the Pharmacy Practices Act] or any other laws of this state, the provisions of this act shall be controlling.

2. Section 76–1–103(1):

   The provisions of this code shall govern the construction of, the punishment for, and de-

   fenses against any offense defined in this code or, except where otherwise specifically provided or the context otherwise requires, any offense defined outside this code; provided such offense was committed after the effective date of this code.

3. Defendant could also have asked for an instruction on the offense of providing his home for the sale of marijuana, as embodied in section 58–37–8(2)(a)(ii) of the Act. A first conviction of that offense would have been a class A misdemeanor under section 58–37–8(2)(b)(i).

This Court upheld the aiding and abetting instruction to the jury, holding that it was applicable "because the Controlled Substances Act does not specifically provide otherwise, nor does its context otherwise require." *Jeppson,* 546 P.2d at 896. We overrule that holding today as incorrectly stating the law.

We used the just-cited language in dictum in *Hicken* to distinguish our holding there from the one in *Jeppson,* but premised it incorrectly on the assumption that "there are no provisions in the Utah Controlled Substances Act dealing with the offense of providing a place for illegally selling drugs," *Hicken,* 659 P.2d at 1040, when indeed section 58-37-8(2)(a)(ii) contains specific language to that effect. The State itself suggests to us that the Court could have found the defendant in *Jeppson* guilty under that section, but then concludes that the result in *Jeppson* is correct because the factual situation does not fit within the Act. We do not agree. As mandated by the specific provisions of sections 58-37-19 and 76-1-103(1), the owner of a home cannot be charged with having aided and abetted another when he or she can be charged with specifically having permitted his or her home to be occupied by persons unlawfully distributing controlled substances therein. Likewise, a person cannot be charged with aiding and abetting another when he or she handles the negotiations and price of a controlled substance, but must instead be charged with agreeing, consenting, offering, or negotiating to distribute a controlled substance as specifically provided in section 58-37-8(1)(a)(iv).

In sum, wherever culpable conduct arises under the Act and is specifically defined by it, it is incumbent upon trial courts to reject instructions to the jury under more general provisions outside the Act. Where that principle is not strictly adhered to, the result is too often an appeal by the defendant, either meritorious, that he was not charged as specifically required under section 58-37-19, or meritless, that he should have been charged under a broader statute bearing a lesser penalty, as in *Helmuth, supra.* Trial courts should put the State to its proof under the Act whenever the requirements prescribed, the offenses defined, or the penalties imposed relating to substances controlled by the Act are or appear to be in conflict with any other laws of this state. U.C.A., 1953, § 58-37-19.

Under the just-cited criteria, section 58-37-19 controls. Although the penalty for aiding and abetting would be the same as the penalty for arranging to distribute, the offenses defined under the aiding and abetting statute are different from those defined under the arranging section. The actus reus under section 76-2-202 is soliciting, requesting, commanding, encouraging, or aiding in the substantive offense of distribution. The actus reus under section 58-37-8(1)(a)(iv) constitutes an act of agreement, consent, offer, or arrangement to distribute. That conflict must be resolved under the Act, not outside it.

The evidence admitted at trial through the transcript of the taped conversation left in doubt how the exchange of marijuana and money took place. The prosecutor brushed aside the importance of that exchange. "It doesn't matter who handed the marijuana over to [the informant] and it doesn't matter to whom he handed the money. Leonard Scott was involved all the way through...."

Under the Act, it matters very much what the role of a defendant is in an exchange of controlled substances for money. Under the circumstances here, it was error to allow the State to instruct the jury on aiding and abetting. The jury may well have found defendant guilty of distribution, but it is equally likely that it convicted him of aiding and abetting. That speculation is insufficient foundation for upholding the verdict.

The case is reversed and remanded for a new trial.