STATE of Utah, Plaintiff and Respondent,

v.

Elias R. DeALO, Defendant and Appellant.

No. 860232–CA.

Court of Appeals of Utah.

Dec. 23, 1987.

Marcus Taylor (argued), Labrum & Taylor, Richfield, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Kimberly K. Hornak (argued), Asst. Atty. Gen., for plaintiff and respondent.

Before GREENWOOD, GARFF and BENCH, JJ.

OPINION

BENCH, Judge:

Defendant seeks reversal of his jury conviction of possession with intent to distribute a controlled substance, in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (1986).[1] On appeal defendant contends the trial court erred in: 1) ruling he had no standing to contest the search of the car; 2) instruct-

ing the jury on aiding and abetting pursuant to Utah Code Ann. § 76–2–202 (1978); and 3) admitting a California search warrant and affidavit and a "dope ledger" into evidence. We reverse and remand for a new trial.

On February 12, 1986, a police officer stopped a vehicle for speeding near Salina, Utah. Defendant Elias R. DeAlo was driving the vehicle and Rafael A. Villa was a passenger.[2] Before stopping the vehicle, the officer had learned, through the state's computer, that the car was registered to Antonio Villa of New York but that the registration had been suspended.

After stopping the car, the officer examined defendant's California driver's license, Rafael Villa's New York driver's license, and the car's registration which indicated the car was registered to Antonio Villa of New York. Rafael Villa told the officer that Antonio Villa was his brother. Based on the appearance of the men, the appearance of the car, the suspended status of the license plate, and the aroma of the car, the officer asked if there were controlled substances in the car. Defendant said there were none. The officer then obtained defendant's written consent to search the car. The officer first searched the trunk of the car and found items belonging to both defendant and Rafael Villa, including spare tires, extra fuel, a tool box, and a suitcase. He also saw "a metal container fabricated into the vehicle from the front portion of the trunk." The officer then searched the interior of the car and observed many items of personal property which he was advised belonged to defendant and Rafael Villa, including pillows, blankets, cassette tapes, and clothing. He also saw hinges riveted to the floorboard behind the bottom portion of the back seat. The officer then discontinued the search. A short time later he returned to the vehicle with a search warrant and opened the metal compartment. He discovered five packages wrapped in duct tape, the contents of which were later analyzed as cocaine. Defendant

---

1. Amended in 1987, subsection (ii) is now subsection (iv).

2. Rafael Villa, a co-defendant, was tried separately.

denied knowledge of the metal box and its contents.

Prior to trial and before the defendants' cases were severed, defendants filed a motion to suppress. At the suppression hearing, defendants called the arresting officer as a witness. The officer testified that at the time of the stop, defendant DeAlo was driving and had the keys to the car and trunk, that both defendants' personal belongings were in the car and trunk, that the defendants were on a two week vacation traveling from California to New York, and that he understood Rafael Villa was using the car with his brother's permission. The court ruled defendants had no standing to challenge the search because they did not own the car and had no possessory interest in it.

Subsequently, during defendant's trial, the drugs seized in the search were admitted into evidence. Also admitted were a California search warrant and affidavit and a "dope ledger" seized in the California search. The warrant permitted a search of defendant's California home a week after his arrest in Utah. The affidavit described the activities observed at defendant's house which led to the affiant's belief that a search of the premises would provide information regarding a major cocaine distribution scheme. During the search, a document containing defendant's handwriting was seized. At trial, a federal drug enforcement agent testified that the document was a dope ledger indicating the date and number of packages of dope delivered. Defendant was convicted by a jury as charged.

## I. STANDING

■ The first issue raised in this appeal is whether the trial court erred in concluding defendant had no standing to challenge the search of the car.

■ The starting point for this analysis is *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In *Rakas*, the United States Supreme Court held a defendant has standing to challenge a search if he or she can establish a legitimate expectation of privacy in the area searched.

In so holding, the Court rejected the earlier standard of "legitimately on the premises" set out in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). A defendant "who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy" in the property. *Rakas*, 439 U.S. at 144 n. 12, 99 S.Ct. at 431 n. 12. But a defendant who asserts neither a property nor a possessory interest in the automobile, nor an interest in the property seized, has no legitimate expectation of privacy and thus no standing. *Id.* at 148, 99 S.Ct. at 432.

The Utah Supreme Court has adopted and applied the *Rakas* rule. In *State v. Valdez*, 689 P.2d 1334 (Utah 1984), "[d]efendant concede[d] that he did not own the car or the attache case [found in the trunk] containing the evidence complained of, and [therefore] failed to show that he had any legitimate expectation of privacy in the effects searched." *Id.* at 1335. In *State v. Constantino*, 732 P.2d 125, 126–27 (Utah 1987), "[d]efendant presented no testimony that he had driven the car with the permission of the owner or that he had borrowed the car under circumstances that would imply permissive use. Absent claimed right to possession, he could not assert any expectation of privacy in the items seized and had no standing to object to the search."

The facts in the instant case parallel those in *Rakas*, *Valdez*, and *Constantino*. Defendant denied any ownership in the car and any knowledge of the secret compartment or its illegal contents. The only substantive evidence defendants presented at the suppression hearing was the testimony of the arresting officer that it was his understanding Rafael Villa was using the car with his brother's permission. No other witnesses were called and no other evidence was presented. It might be argued the officer's testimony established some expectation of privacy on the part of Villa. That certainly does not establish an expectation of privacy on the part of defendant. In *Rakas*, the United States Supreme Court held the fact defendants were in the car with the owner "was not determinative of

whether they had a legitimate expectation of privacy in the particular areas of the car searched." 439 U.S. at 148, 99 S.Ct. at 433.

■ In any event, an officer's belief is irrelevant to the question of a defendant's expectation of privacy. "[A] defendant's standing to object should not depend on the state of the officer's belief as to the defendant's possessory interest in the vehicle to be searched." *State v. Boutot*, 325 A.2d 34, 42 (Me.1974). Professor LaFave, in his treatise on the fourth amendment, cites *Boutot* and goes on to explain as follows:

> The officer's belief and the reasonableness of it, of course, are of considerable significance if there is occasion to reach the merits and determine if the search was lawful, but it has no bearing upon the question of standing. A person's standing depends upon *his* justified expectation of privacy....

LaFave, Search and Seizure, § 11.3(3) at 329 (1987) (emphasis in original).

■ The fact that defendant had the keys was not determinative of a possessory interest as evidenced by *Valdez* and *Constantino*. Defendant may have had an expectation of privacy in his personal belongings in the car, but defendant did not meet his burden of showing an expectation of privacy over the car itself. *Rakas*, 439 U.S. at 132 n. 1, 99 S.Ct. at 424 n. 1. On the facts presented, defendant was simply a passenger who happened to be taking his turn driving when the car was pulled over. Areas like the glove compartment, under the seats, and the trunk "are areas in which a passenger *qua* passenger simply [does] not normally have a legitimate expectation of privacy." *Id.* at 148–49, 99 S.Ct. at 433.

In conclusion, defendant presented no evidence establishing a legitimate expectation of privacy in the area where the cocaine was found. Therefore, he had no standing to object to the search and the trial court's ruling on that issue is affirmed.

## II. AIDING AND ABETTING INSTRUCTION

■ After both sides rested, the court instructed the jury on aiding and abetting

under section 76–2–202. Defendant objected, claiming that the Utah Controlled Substances Act, specifically section 58–37–8(1)(a)(iv) (1986),[3] should be applied rather than section 76–2–202. Defendant claims the instruction prejudiced him because it allowed the prosecution to weave a tale of a major cocaine distribution scheme.

The jury was instructed according to section 76–2–202 as follows:

> Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct.

The jury was then given a verdict form with three choices: 1) guilty of possession with intent to distribute for value a controlled substance, a second degree felony, as charged in the information; 2) guilty of being in the presence of controlled substances, a class B misdemeanor, a lesser included offense to that charged in the information; or 3) not guilty. The jury chose the first option.

Defendant argues the jury should have been instructed on section 58–37–8(1)(a)(iv) which states:

> Except as authorized by this chapter, it is unlawful for any person knowingly and intentionally to agree, consent, offer, or arrange to distribute or dispense a controlled substance for value or to negotiate to have a controlled substance distributed or dispensed for value and distribute, dispense, or negotiate the distribution or dispensing of any other liquid, substance, or material instead of the specific controlled substance so offered, agreed, consented, arranged, or negotiated.

The Utah Supreme Court has addressed the interplay of section 58–37–8(1)(a)(iv) and section 76–2–202 in two recent cases. *State v. Hicken*, 659 P.2d 1038 (Utah 1983);

---

**3.** Amended in 1987, subsection (iv) is now sub-   section (ii).

*State v. Scott,* 732 P.2d 117 (Utah 1987). In *Hicken,* the Court examined an information which charged defendant with distribution of marijuana for value. Defendant was invited to an undercover agent's house to sell narcotics or to arrange for a sale. Defendant called a Mr. Larsen, arranged the sale of marijuana and the agent bought the marijuana from Mr. Larsen. Subsequently, defendant was charged with distribution of marijuana for value under section 58–37–8(1)(a)(ii). Although the information charged defendant with distribution of marijuana for value, prosecutors argued he was guilty of that offense as an aider and abetter under section 76–2–202. The Court found that because the Controlled Substances Act "expressly and specifically sanctions the offense of arranging for the distribution of a controlled substance," it displaces section 76–2–202. 659 P.2d at 1040.

Subsequently, in *Scott* the Court stated "wherever culpable conduct arises under the [Controlled Substances] Act and is specifically defined by it, it is incumbent upon trial courts to reject instructions to the jury under more general provisions outside the Act." 732 P.2d at 120. In *Scott,* defendant was convicted by a jury of distribution of a controlled substance for value, and the jury was instructed under section 76–2–202. The Court stated that the actus reus under section 76–2–202 is different from the actus reus under section 58–37–8(1)(a)(iv). Therefore, the Court reversed defendant's conviction stating "the jury may well have found defendant guilty of distribution, but it is equally likely that it convicted him of aiding and abetting. That speculation is insufficient foundation for upholding the verdict." *Id.*

Under the reasoning of *Hicken* and *Scott,* the jury in the instant case was improperly instructed. However, defendant herein was convicted of possession with intent to distribute a controlled substance and not of aiding and abetting. Therefore, because the aiding and abetting instruction was superfluous and not the basis of the jury's verdict, the error was harmless.

## III.   ADMISSIBILITY OF SEARCH WARRANT, AFFIDAVIT, AND DOPE LEDGER

■   Defendant's third contention on appeal is the trial court erred in admitting a California search warrant and affidavit and a dope ledger into evidence. The warrant and affidavit authorized a search of defendant's California home about a week after his arrest in Utah. The warrant and affidavit explained in detail a major cocaine distribution scheme. The affidavit was based on information obtained from seven people who pleaded guilty to multiple narcotics violations in Texas in 1984. It describes activities observed by police surveillance which suggested that a search of certain locations would provide evidence of a cocaine distributing organization. Defendant was not named in the affidavit, but his residence was one of the locations subject to police surveillance and later searched.

The prosecution offered the warrant and affidavit as foundation for the testimony of the California police officer who conducted the search. Defendant objected to the warrant and affidavit on the grounds it was not needed as foundation, was hearsay and not admissible under an exception to the hearsay rule, and was more prejudicial than probative. The court overruled the objection and allowed the warrant and affidavit into evidence as foundation for the officer's testimony.

At trial, the officer who conducted the search testified a search of defendant's home produced some of defendant's identification cards and a document containing defendant's handwriting, but no cocaine. The handwritten document was admitted into evidence over defendant's objection after a federal drug enforcement officer testified it was a "dope ledger," showing how many packages of cocaine were delivered, the codes on the packages sold, and the name or pseudonym of the person to whom the packages were delivered.

On appeal, defendant argues this evidence was inadmissible under Utah R.Evid. 403, 404(b), and 803. A trial court's decision to admit or exclude evidence will not

be reversed absent an abuse of discretion. *State v. Cloud,* 722 P.2d 750 (Utah 1986); *Terry v. Zion's Cooperative Mercantile Institution,* 605 P.2d 314 (Utah 1979). In addition, "error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Utah R.Evid. 103.

Rule 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." The Utah Supreme Court has held "where evidence [is] shown to have supported only conjectural inferences which had little probative value, or where no evidence was adduced that showed that a fact had any causal connection with the [crime charged]," reversal may be appropriate on "grounds that the improperly admitted evidence could only have served to confuse and mislead the jury or to prejudice the outcome of the case." *Pearce v. Wistisen,* 701 P.2d 489, 491–92 (Utah 1985).

In the instant case, the probative value of the warrant and affidavit is questionable. Defendant is not named in either document. Although the connection between defendant and the documents is clear, i.e. defendant's residence was subject to surveillance and searched, the connection between the documents and the facts of this case is less clear. Assuming the documents were introduced to prove defendant's intent to distribute a controlled substance, we must examine whether the documents had any tendency to prove that intent. Neither the affidavit nor warrant make any statements even remotely related to the seizure of the cocaine in Utah. Further, no cocaine was seized in the California search. At best, the affidavit and warrant imply that defendant's home may be tied to a major cocaine distribution scheme.

The probative value of the dope ledger is also questionable. The prosecution admitted that the names, codes, and dates on the dope ledger bore no relation to the cocaine seized in Utah. The prosecution claimed, however, the ledger demonstrated defendant's knowledge of and intent to participate in a major cocaine distribution scheme. Even assuming the ledger demonstrated those facts, it still was not connected to the cocaine seized in Utah.

The marginal probative value of this evidence was overwhelmingly outweighed by the probability of unfair prejudice and confusion of the issues submitted to the jury, and its admission clearly affected the substantial rights of defendant. The evidence clearly implied defendant was involved in a major cocaine distribution scheme. The prosecution presented no other evidence to prove intent to distribute, a basic element of the crime of which defendant was convicted. We hold that in these circumstances, the trial court committed reversible error in admitting the California search warrant and affidavit and the dope ledger. Because we find the admission of this evidence was erroneous under Utah R.Evid. 403, it is unnecessary to address defendant's remaining objections to its admissibility.

Defendant's conviction is reversed. The matter is remanded for a new trial.

GARFF, J., concurs.

GREENWOOD, Judge (concurring and dissenting):

I must respectfully disagree with the majority on the issue of standing. I believe that defendant met his burden of proof and, therefore, had standing to contest the legal sufficiency of the search of the car. As stated in the majority opinion, the fourth amendment offers protection against unreasonable searches and seizures to those who have a "legitimate expectation of privacy" in the invaded place. *Rakas v. Illinois,* 439 U.S. 128, 140, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978). In *Rakas,* an officer stopped a vehicle which he believed was the getaway car for an armed robbery. A search of the vehicle revealed rifle shells in the glove compartment and a sawed-off rifle under the front passenger seat. At the motion to suppress hearing, defendants did not assert a possessory or proprietary interest in the car, the rifle or the shells. The Court held that because defendants asserted no property or posses-

sory interest in the automobile or the property searched, they were not entitled to challenge the search of the glove compartment or areas under the seat of the vehicle.

In four recent Utah cases, the Utah Supreme Court has found no standing where the defendant failed to show evidence of ownership or possession of the area or property searched. In *State v. Purcell*, 586 P.2d 441 (Utah 1978), the Court found defendant lacked standing to object to the search of a stolen vehicle. *See also State v. Larocco*, 742 P.2d 89 (Utah App.1987) (defendant had standing to challenge the search of a vehicle in which he claimed ownership where one of the critical facts to be established at trial was whether the car was stolen). Lack of standing to question the search of an automobile was again found in *State v. Valdez*, 689 P.2d 1334 (Utah 1984), where defendant did not own the automobile or attache case seized and did not show a legitimate expectation of privacy in the effects searched. Similarly, in *State v. Iacono*, 725 P.2d 1375 (Utah 1987), defendant had no standing to challenge the search of his mother's trailer where he failed to provide evidence that he shared ownership, use, possession or an expectation of privacy in the trailer. Most recently, in *State v. Constantino*, 732 P.2d 125, 126–27 (Utah 1987), the Court found no standing where "[d]efendant presented no testimony that he had driven the car with the permission of the owner or under circumstances that would imply permissive use. Absent claimed right to possession, he could not assert any expectation of privacy in the items seized...."

Analyzing this case in light of these principles, I am persuaded that defendant had standing to challenge the search of the car. At the motion to suppress hearing defendant called the arresting officer as a witness. The officer testified that when he stopped the vehicle defendant was driving and had the keys to the ignition and trunk. After having defendant sign a written consent to a search of the car, the officer asked defendant to first open the trunk. Defendant complied. In the trunk the officer saw defendant's personal belongings and the "metal compartment." The officer

also testified that defendants were on a two week vacation traveling from California to New York and that he understood Rafael Villa was using the car with his brother's permission. Finally, the officer testified that he had checked and determined that the car was not reported stolen.

The facts of this case differ substantially from those in *Rakas, Purcell, Valdez, Iacono* and *Constantino*, in that defendant, in this case, asserted a possessory interest in both the car and his personal belongings in the passenger compartment and trunk. Also, in contrast to *Rakas*, defendant in the present case was more than a passenger in the vehicle. He was driving the car and had the keys to the ignition and trunk in his possession. He had complete dominion and control over the area searched and could exclude all others. Although defendant did not testify that he had the owner's permission to use the car, the officer did testify that it was his understanding that the passenger, Rafael Villa, had his brother's permission to use the car. At least one court has held that the driver of a car had standing to challenge the search of that car where the owner gave the passenger permission to drive the car and where the driver had the keys to the car and could exclude all others, except the owner and the passenger, from the car. *State v. Sanders*, 5 Kan.App.2d 189, 614 P.2d 998 (1980). In *Sanders*, the court stated

> While appellant in the instant case was not the owner of the automobile, it has never been alleged that the lady friend of appellant lacked proper permission to drive the same, or that she lacked the requisite ability to allow the appellant to drive the car. Appellant, thus, was more than a mere passenger. He possessed the keys to the car and was driving the same. While it is probable that the lady who allowed appellant to drive could have revoked permission to do so, and while unquestionably the owner of the car could have deprived appellant of his possession thereof, it is not contended that they had done so at the time of appellant's apprehension. We conclude, that, at least insofar as the criminal law

is concerned, the appellant stood in the place of the owner, and was entitled to the same expectation of privacy as would have extended to the owner at such time and place.

*Id.,* 614 P.2d at 1003.

Permission from Rafael Villa for defendant to drive the car, combined with the facts that defendant had his personal belongings in the car and trunk, was traveling in the car on an extended vacation and had the keys to the car and trunk, demonstrate that defendant had a legitimate expectation of privacy in the areas searched.

The majority opinion's reliance on *State v. Boutot,* 325 A.2d 34 (Me.1974), for the principle that an officer's state of mind should not determine standing, is unpersuasive. First, the case predates *Rakas,* and does not, therefore, focus on the "legitimate expectation of privacy" standard. Second, in this case the officer's testimony went to objective facts, such as who was driving, what was said at the time of the stop, and the identity of the owner. None of the evidence suggesting that defendant had lawful possession of the car was refuted by the state. Third, in *Boutot,* the car was known to be stolen and defendant presented no evidence of a proprietary or possessory interest in the vehicle. *Id.* at 37.

I do not mean to imply that every passenger in a car has standing to object to a search of the car, and agree with *Rakas* that areas of a car such as the trunk "are areas in which a passenger *qua* passenger simply [does] not *normally* have a legitimate expectation of privacy." *Rakas,* 439 U.S. at 148–49, 99 S.Ct. at 433 (second emphasis added). However, defendant in this case was not just an ordinary passenger getting a ride from the car's owner. He had permission to use the car for an extended period of time, placed his personal possessions in the car, was able to lawfully exclude others from the car, and had, as a result, a subjective legitimate expectation of privacy in the car and its contents. As such, he had standing to protest the search of the entire car, not just his personal possessions, as would the owner of the car. I believe that the majority's finding that defendant's legitimate expectation of privacy cannot extend beyond his personal property is not supported by the cases cited, each of which involves a defendant found to have no standing to object to a search of *any* part of the vehicle or its contents.

I would find that defendant had standing to contest the search and seizure and remand for a determination of whether the search and seizure was lawful.

I concur with the remainder of the majority opinion.