No. 59,192

STATE OF KANSAS, *Appellee,* v. SULLIVAN MACK HOLLOMAN, *Appellant.*

(731 P.2d 294)

Opinion filed January 16, 1987.

*Rosanne Piatt,* assistant appellate defender, argued the cause and *Benjamin C. Wood,* chief appellate defender, was with her on the brief for appellant.

*Geary N. Gorup,* assistant district attorney, argued the cause and Neal B. Brady, assistant district attorney, *Robert T. Stephan,* attorney general, and *Clark V. Owens,* district attorney, were on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is a criminal action wherein Sullivan Mack Holloman appeals from his jury conviction of aggravated kidnapping, K.S.A. 21-3421; aggravated criminal sodomy, K.S.A. 1985 Supp. 21-3506; indecent liberties with a child, K.S.A. 1985 Supp. 21-3503; and two counts of kidnapping, K.S.A. 21-3420.

Holloman's convictions arose from the following incidents:

In the late afternoon of August 26, 1985, ten-year-old M and her cousins, nine-year-old J and 11-year-old L, were riding bicycles in an area near the Joyland Amusement Park in Wichita. The boys rode their bikes down an incline on a walkway over I-135, but M hesitated. A black man on a ten-speed bicycle (later identified to be the appellant) happened by at this time. He encouraged M to follow the boys down the incline. M responded by riding down the ramp. The appellant followed on his own bike. Holloman then warned the children it was dangerous to ride on the street. He seemed to enjoy having an audience and warmed to his task by telling them a story about his little brother who had once come down the same street and "the whole side of his face came off" when he was hit by a car.

Holloman continued to talk to the children, mentioning God and his beliefs. He showed them a certificate he said was the title to a car he owned.

During this conversation, the children and Holloman were joined by two other children who were acquainted with Holloman. The new visitors were later identified to be Bernard Birch and Cornelius Bell. After a brief conversation, Birch and Bell moved on, leaving Holloman alone with the other three children.

At this time Holloman told the children to go home and "get more permission to stay." The children started to go home, but the appellant had second thoughts and called them back, suggesting they join him under a nearby bridge to avoid the summer heat. The children complied with this request and at Holloman's directions they moved their bicycles beneath the bridge.

Once they were isolated under the bridge, Holloman's personality changed. He became threatening. He said, "Now, don't try to move or do anything funny 'cause I've got a gun here." The gun was never displayed but all three children later recalled hearing the appellant say he had a gun in his sock. He also told the children, "Do you know if I wanted to, I could get your shoelaces from you and tie you up with them?" This statement was followed by the appellant's command to the children to "[s]tay there and don't whisper or do anything because I have to go look around the corner and see if anybody is there."

Holloman then ordered the two boys to sit against a wall (bridge support) and commanded M to follow him to the other

side of the wall. While M and the appellant were behind the wall, the boys remained seated as they were scared the appellant had a gun. L considered running away but didn't do so because he thought if he ran, he would leave M and J at Holloman's mercy.

While the boys waited on the other side of the wall, the appellant sexually assaulted M. M complied with all of appellant's demands upon her because she didn't want to get hurt. At trial, the sexual abuse related by M was corroborated by a physician's testimony that his examination conducted the evening of August 26, 1985, revealed a fresh tear of the tissue of the vaginal entrance which appeared to have occurred when the tissue was stretched beyond its normal limits.

After the appellant had finished with M, he asked her if she was going to tell anyone and she responded that she would not. About that time, L came around the corner saying, "I thought you called us." The appellant then directed the children to get their bikes and told L to leave first, then J, and then M. When they got home, they told their parents what had happened and described their assailant as a black man wearing brown corduroy pants, white leather tennis shoes, and a black hat with a wing design on it. The police were immediately notified of the incident and the children's parents began searching for the assailant.

Officer Philippe Jacob, a Wichita police officer, was on duty, patrolling an area about four blocks from Joyland when he received the dispatch informing him a rape had occurred near Joyland. The suspect was described as a black male on a grey ten-speed bicycle. The officer almost immediately observed a black male riding a grey ten-speed bicycle on Hillside Street, near Joyland. The officer knew the man to be L. C. Holloman.

L. C. Holloman was stopped, searched, handcuffed, and taken to police headquarters. The children were asked to identify the suspect and both L and J positively identified L. C. as the man they had been with that afternoon. M did not positively identify L. C. Holloman as the man who had assaulted her. All three children said the bike L. C. was riding was the same bike ridden by the man they had seen that afternoon.

L. C. Holloman told Officer Jacob that he (L. C.) was the only person who had ridden the bike that day. L. C. was arrested and

charged with aggravated kidnapping, aggravated criminal sodomy, indecent liberties with a child, and two counts of kidnapping.

Detective Michael Clark, in his investigation of the case, interviewed Bernard Birch, one of the children who had spoken to the other three children during the incident. Bernard told Detective Clark that Mack Holloman, not Mack's brother L. C., was the man whom he had seen talking to the three children.

Detective Clark also interviewed M, who told him that the man who had assaulted her did not look like L. C. Holloman. She said that L. C. was "skinnier" and the pants he wore were darker than those of her assailant. She further stated that although L. C. had a scar on his face she could not remember a scar on the man who had attacked her. Finally, M told Detective Clark that "she did not think [L. C.] was the guy."

Based on this information, Detective Clark informed the prosecutor's office he believed the wrong person had been arrested. On September 11, 1985, a search warrant was issued to look for a black hat, a billfold, a car title, and tennis shoes at 2756 Holyoke Court, the home of L. C. and Mack Holloman and their mother, Mrs. Bernice Bush.

This warrant was executed in the presence of both Mack and Mrs. Bush, and the hat, the shoes, and the billfold were discovered in Mack's bedroom and seized. A search of L. C.'s room yielded nothing named in the warrant.

Mack Holloman ultimately confessed in a tape-recorded statement to the acts described by the children, with the exception that he denied one act of aggravated sodomy with M. Following Mack's confession, L. C. was released. Upon his release, L. C. informed Detective Clark that his brother Mack had brought his bike back to the house just prior to the time L. C. had left on it.

After a jury trial, Mack Holloman was convicted of aggravated kidnapping, aggravated criminal sodomy, indecent liberties with a child, and two counts of kidnapping.

The appellant received a sentence of life imprisonment for the aggravated kidnapping, five to 20 years for aggravated sodomy, three to ten years for indecent liberties, and five to 20 years for each charge of kidnapping, with said sentences to run concurrently. Holloman timely appeals his convictions.

Appellant first challenges the sufficiency of the evidence to support his conviction of the aggravated kidnapping of M.

Before considering this challenge, we note the scope of appellate review when a defendant challenges the sufficiency of the evidence to support a conviction is whether the evidence, viewed in a light most favorable to the prosecution, convinces an appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of the charge are sustained. *State v. Van Cleave,* 239 Kan. 117, 121, 716 P.2d 580 (1986).

K.S.A. 21-3420(b) provides that kidnapping is a "taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person . . . [t]o facilitate flight or the commission of any crime." Aggravated kidnapping is kidnapping where bodily harm is inflicted. K.S.A. 21-3421. The appellant contends M was not taken or confined against her will and therefore could not have been kidnapped. He further argues any taking which occurred was slight, inconsequential, and merely incidental to the crimes of indecent liberties and aggravated sodomy.

We recently discussed the difference between a taking to facilitate the commission of a crime and a taking which is merely incidental to the main crime in *State v. Jackson,* 238 Kan. 793, 802-03, 714 P.2d 1368 *cert. denied* _____ U.S. _____ (1986). There we said:

" '[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

" '(a) Must not be slight, inconsequential and merely incidental to the other crime;

" '(b) Must not be of the kind inherent in the nature of the other crime; and

" '(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.'" (Quoting *State v. Buggs,* 219 Kan. 203, 216, 547 P.2d 720 [1976]).

The movement of M from a place next to her cousins to behind the bridge support out of view of the boys clearly made the commission of the aggravated sodomy and indecent liberties more difficult to detect. As such, the movement constituted kidnapping. See *State v. Bourne,* 233 Kan. 166, 168, 660 P.2d 565

(1983) (movement of little girl from one room to the next was sufficient movement to constitute kidnapping).

We further hold the evidence was sufficient to establish a taking or confining by "force or threat of force." In *State v. Tillery*, 227 Kan. 342, 345, 606 P.2d 1031 (1980), we held the kidnapping of a child may be accomplished by using minimal force. We noted each case will depend upon the particular facts of the taking or confining. Thus, the appellant's reference to a gun and his suggestion that he could tie the children up with their shoelaces was a sufficient threat of force to constitute a "taking or confining." Moreover, M testified that she complied with the appellant's demands out of fear of being hurt. The facts are sufficient to support the appellant's conviction of aggravated kidnapping.

The appellant next argues the evidence was insufficient to convict him of the kidnapping of L and J.

Although it appears the children were not "taken" to the area underneath the bridge by force or threat of force, once they got there they were "confined" by threat of force. See *State v. Coberly*, 233 Kan. 100, 103-04, 661 P.2d 383 (1983) ("confined" distinguished from "taking").

Both boys heard the appellant say he had a gun in his sock and both boys also heard him suggest he could tie them up with their shoelaces. The appellant ordered the children to sit next to a wall beneath the bridge and both boys testified they remained seated there for fear of harm from the appellant. Additionally, during his sexual assault on M, the appellant checked on the two boys periodically and ordered them to remain silent. Holloman's restraint of the boys is independent of the other crimes and substantially lessened the risk of detection.

Thus, the evidence is sufficient to hold the appellant kidnapped the two boys.

As his final challenge to the sufficiency of the evidence, appellant argues the evidence did not establish he was the individual who committed the crimes charged.

The appellant relies heavily upon the fact that both L and J erroneously identified L. C. Holloman as the perpetrator of the crimes a short time after they occurred. At a line-up two months after the incident, only L positively identified Mack Holloman as the assailant. At trial, none of the three children identified Mack as their assailant.

The victims were admittedly somewhat confused as to the identity of the individual who committed the crimes. However, we have consistently held that a conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Hanks,* 236 Kan. 524, 528, 694 P.2d 407 (1985); *State v. White & Stewart,* 225 Kan. 87, 99, 587 P.2d 1259 (1978).

Although circumstantial, there was ample evidence from which to convict the appellant of the crimes charged. All three children positively identified the bicycle seized by the police as the one used by the assailant. In a tape-recorded statement which was played to the jury, the appellant confessed to the acts of sodomy and indecent liberties committed upon M. The appellant admitted at trial that the billfold and hat taken from his room in the search belonged to him. These items closely resembled the billfold and hat that all three victims described as being in the assailant's possession the day the crimes occurred. In addition, Bernard Birch identified Mack Holloman as the man he had seen talking to the three cousins on that day.

We hold the evidence is sufficient to convict Mack Holloman of the crimes charged.

Appellant next argues the items seized pursuant to the search warrant were improperly admitted as evidence at trial.

The trial court ruled that because the residence from which the items were seized was owned by the mother of Mack Holloman, the appellant lacked standing to challenge the search warrant. Accordingly, the trial court admitted the items seized. On appeal, the State concedes the trial court erred in finding the appellant lacked standing to raise this issue. However, we must still determine whether technical irregularities in the execution of the search warrant justify a finding that the trial court committed reversible error in admitting items seized in the search.

It is undisputed Detective Clark gave a duplicate of the warrant and an inventory of the items seized to the appellant's mother, Bernice Bush. This procedure was in violation of K.S.A. 22-2506, which provides that a "duplicate copy [of the warrant] shall be left with any person from whom any things are seized." It also violated K.S.A. 22-2512, which provides that the officers "seizing the property shall give a receipt to the person detained or arrested particularly describing each article of property held."

K.S.A. 22-2511 provides:

"No search warrant shall be quashed or evidence suppressed because of technical irregularities not affecting the substantial rights of the accused."

Thus, the issue for our determination is whether the technical irregularities in the execution of the search warrant substantially affected the rights of the accused.

Although it is not specifically stated in appellant's brief, he appears to be arguing that "but for" the technical irregularities in the search warrant, he would not have agreed to go to the police station to discuss the case. This argument presupposes that the appellant was not aware he was a "suspect" in the case and if he had been personally handed a receipt for the items seized, the appellant would have then realized he was a suspect.

The State points out in its brief that the contents of the search warrant were read aloud to everyone present in the home, including Mack Holloman. The appellant was thus aware of the evidence sought in the warrant and also realized that the items seized in the search were located in his bedroom. Further, the appellant specifically asked the detective if he had to go with him or if the detective had a warrant for his arrest.

Under these circumstances, we hold the appellant failed to demonstrate any substantial prejudice resulting from the technical irregularities in the execution of the warrant. Accordingly, the trial court did not err in admitting into evidence the items seized pursuant to the warrant.

Finally, appellant asserts the trial court erred in holding his confession was freely and voluntarily made.

Appellant argues his confession was the result of coercion because he was faced with "helping his brother out" by confessing or letting his brother stay in jail. Appellant contends that Detective Clark, in questioning the appellant, advised him to "tell the truth" to "get L. C. out of jail." We must determine whether such statements, if made, constituted impermissible coercion such as to violate the appellant's Fourth Amendment right to due process.

We recently discussed the concept of coercion as it relates to obtaining a confession in *State v. Waugh*, 238 Kan. 537, 541, 712 P.2d 1243 (1986). There, we stated:

"Under the Fourteenth Amendment due process voluntariness test, a case-by-case evaluation approach is employed to determine whether coercion was impermissibly used in obtaining a confession. Coercion in obtaining a confession

from an accused can be mental as well as physical. In determining the voluntariness of a confession of crime, the question in each case is whether the defendant's will was overborne at the time of the confession; if so, the confession cannot be deemed the product of a rational intellect and a free will."

We first note appellant's assertion that he was faced with the choice of helping his brother out or letting his brother stay in jail is unfounded. This statement is not supported by the record on appeal. Nor is the statement that Detective Clark encouraged Mack Holloman to "tell the truth" to "get L. C. out of jail" an accurate statement of their conversation.

However, even if the appellant had been told that if he confessed L. C. would be released, the confession would still be admissible. In *State v. Churchill*, 231 Kan. 408, Syl. ¶ 1, 646 P.2d 1049 (1982), we held:

"A confession induced by a promise of a collateral benefit, with no assurance of benefit to accused with respect to the crime under inquiry, is generally considered voluntary and admissible in evidence, unless the circumstances surrounding the promise of the collateral benefit were such as to render the confession untrustworthy or the promise could reasonably be calculated to produce a confession irrespective of its truth or falsity."

Here, the appellant does not contend he was ever promised any personal benefit if he confessed. Nor is there any contention the circumstances surrounding the alleged collateral benefit (that L. C. would be released from jail) were such as to render the confession untrustworthy.

The evidence does not support appellant's contention his confession was not freely and voluntarily given.

The judgment is affirmed.

LOCKETT and ALLEGRUCCI, JJ., not participating.