No. 66,495

STATE OF KANSAS, *Appellee,* v. HERMAN R. DEHERRERA, SR.,
*Appellant.*

(834 P.2d 918)

Opinion filed May 22, 1992.

*Hazel Haupt,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the brief for appellant.

*Jeffery E. Goering,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Nola Foulston,* district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is a direct appeal by Herman R. DeHerrera, Sr., from his convictions for attempted first-degree murder, K.S.A. 1991 Supp. 21-3301 and K.S.A. 1991 Supp. 21-3401, and communicating a terroristic threat, K.S.A. 21-3419. DeHerrera also appeals from the sentences imposed and from the trial court's denial of his motion for modification of sentence.

Bertha and Herman R. DeHerrera had been married for 14 years when she left him on June 15, 1990. The DeHerreras' marriage was violent from the beginning. In early 1990, Herman DeHerrera became violent toward their three children. DeHerrera also pulled Bertha's hair, shoved her, and hit her. On numerous occasions DeHerrera threatened to kill Bertha or put her in the hospital if she did not obey him. DeHerrera also threatened to kill her if she ever left him.

Without warning DeHerrera, Bertha packed up the children and furniture and left the family home. On June 26, 1990, Bertha obtained a temporary restraining order against DeHerrera. She left DeHerrera a letter telling him she was quitting her job at Joan's Upholstery Shop. Actually, Bertha continued working at Joan's but drove her cousin's car to the shop to conceal her presence from DeHerrera.

After Bertha left DeHerrera, DeHerrera's son from a previous marriage, Herman R. DeHerrera, Jr., (Rick) of Greeley, Colorado, came to visit him. On July 12, 1990, Rick drove his father to Joan's Upholstery Shop so DeHerrera could get a telephone number he needed. Rick waited while DeHerrera went into the shop. Bertha was at her work table talking to her boss, Joan Goodale, and a friend, Kathy Davis. Upon seeing Bertha,

DeHerrera said, "You done f——— up this time, bitch." DeHerrera then came around the work table and stabbed Bertha five times. As Bertha took a protective position, she heard DeHerrera yell he was going to kill her.

As DeHerrera turned to leave, Rick entered the shop. Bertha later testified she heard DeHerrera tell his son not to touch him "or I will kill you, too." People in the shop tried to stop Bertha's bleeding. DeHerrera then reentered the shop and told them to let her die.

Doctor Jose Hyder, Bertha's physician, testified Bertha had sustained lacerations on her face, shoulder, back, and wrist. Although none of Bertha's wounds were actually life threatening, upon initial examination Dr. Hyder was very concerned that her wounds might include a penetration of the chest cavity. According to Dr. Hyder, such a chest wound could cause a collapsed lung, heart injury, or injury to the great vessels in the chest. Bertha testified she still did not have complete use of her left hand or shoulder.

Police officers were called to the scene and found DeHerrera walking outside the shop. Officer Doug Sutter noticed DeHerrera had blood on his hands and asked him where the knife was. DeHerrera told Sutter he did not have a knife. The knife was later found in Rick's car. After Officer Sutter had arrested him, DeHerrera told the officer his wife had made him mad so he stabbed her. DeHerrera repeated this statement to another police officer.

DeHerrera was charged originally with one count of attempted first-degree murder, a class B felony, or, in the alternative, aggravated battery, K.S.A. 21-3414, a class C felony; two counts of communicating terroristic threats, a class E felony; and two counts of aggravated assault, K.S.A. 21-3410, a class D felony. The State voluntarily dismissed one charge of communicating a terroristic threat; the remaining terroristic threat charge was based upon DeHerrera's statements to Kathy Davis. The aggravated assault charges were based upon DeHerrera's actions toward his son, Rick, and Joan Goodale.

At trial, Kathy testified that as DeHerrera left the shop he threatened her with the knife and told her all this was her fault. DeHerrera further told her that when he got out of jail he would

kill both her and Bertha. Rick testified DeHerrera had told him he was going to kill Bertha for divorcing him. Rick further testified DeHerrera had said he was going to shoot her, and he had seen his father with a gun tucked in his belt the day of the stabbing. James Davis testified he had known DeHerrera for 12 to 13 years. James had talked previously to DeHerrera about the problems DeHerrera was having with respect to Bertha leaving him. James further testified DeHerrera had told him that if he found Bertha he was going to kill her.

DeHerrera testified on his own behalf. He admitted he had told Rick he would kill Bertha, but explained, "[W]hen you are steamed up and you hate somebody, you can't get along with, you say things you don't mean." DeHerrera also admitted to stabbing Bertha, but stated he wanted to hurt her, not kill her. He denied threatening Kathy and Rick, or that he intentionally threatened Joan. DeHerrera further denied he threatened to kill Bertha if she left him. On cross-examination, DeHerrera admitted telling his son he wanted to shoot Bertha. DeHerrera also stated he had a gun with a loaded magazine on the day he attacked Bertha.

At the close of the evidence, the jury found DeHerrera guilty of attempted first-degree murder and communicating a terroristic threat. DeHerrera moved for a new trial and for judgment of acquittal. The trial court denied these motions.

The court sentenced DeHerrera to 14 years to life for attempted first-degree murder and 1 to 2 years for terroristic threat. The trial court ordered the sentences to be served concurrently. The court also found restitution was due and owing. DeHerrera moved to modify sentence, which the trial court denied. DeHerrera appealed.

## I.

DeHerrera raises the issue of whether the trial court properly instructed the jury. First, DeHerrera contends the trial court erred in the wording of the ordering instruction. The ordering instruction given stated:

"The order in which you should consider the charges is as follows:

"You should first consider whether or not defendant is guilty of Attempted Murder in the First Degree.

"If you find defendant is not guilty of this offense, you should consider whether or not defendant is guilty of Attempted Murder in the Second Degree.

"Alternatively you should consider whether or not defendant is guilty of Aggravated Battery.

"If you do not find defendant guilty of either Attempted Murder in the Second Degree or Aggravated Battery, you should then consider whether or not defendant is guilty of Attempted Voluntary Manslaughter.

"When there is no reasonable doubt defendant is guilty of an offense and there is a reasonable doubt as to which of two or more offenses a defendant is guilty, the defendant may be convicted of the lesser offense only."

DeHerrera argues this instruction caused the jury to believe aggravated battery is an alternative charge only to attempted murder in the second degree rather than an alternative charge to attempted murder in the first degree, as charged in the Complaint/Information. Thus, DeHerrera claims the instruction denied him his right to have the jury consider his theory of the evidence; that being DeHerrera intended to harm Bertha but not to kill her.

For support DeHerrera cites *State v. Turbeville*, 235 Kan. 993, 997, 686 P.2d 138 (1984), in which we stated: "It is generally the rule that instructions should be confined to the charges contained in the information and should not be broader or narrower than the information." This court however, went on to state: "Instructions given in violation of the rule, however, have been excused in cases where the substantial rights of the defendant have not been prejudiced." 235 Kan. at 997.

The jury was instructed to first consider whether DeHerrera was guilty of attempted first-degree murder. The jury came to the conclusion DeHerrera was in fact guilty of attempted first-degree murder and, thus, it was unnecessary for the jury to consider whether the defendant was guilty of the lesser included offenses or the alternative charge of aggravated battery. Hence, the ordering of the lesser included offenses with respect to the alternative charge of aggravated battery is irrelevant. Any possible error in the instruction is harmless.

Next, DeHerrera contends the instruction of aggravated battery included an additional element requiring the touching and force used toward Bertha to have been done "in a rude, insolent or angry manner." DeHerrera argues this was an incorrect statement

of the law because it is an element of simple battery, K.S.A. 21-3412, rather than aggravated battery, K.S.A. 21-3414. DeHerrera claims "[t]his excess of proof might guide [the jury] to seek a more serious charge such as the attempted first-degree murder charge . . . ." DeHerrera also argues that "had the defendant been convicted of the aggravated battery as charged, he would have, in essence, been impermissibly convicted of both a crime and its lesser included."

In order to raise this issue on appeal, DeHerrera, through counsel, must have objected to the instruction before the jury retired to deliberate unless the instruction was clearly erroneous. K.S.A. 22-3414(3). DeHerrera did not object to the instruction on aggravated battery. We have stated: "An instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility the jury would have returned a different verdict." *State v. Morris,* 244 Kan. 22, 24, 765 P.2d 1120 (1988). The fact is the jury found DeHerrera guilty of attempted first-degree murder rather than aggravated battery. Thus, we find any error in the aggravated battery instruction was not clearly erroneous.

DeHerrera also argues the trial court's instruction on impossibility was confusing and prejudicial. The impossibility instruction stated: "It is not a defense to a charge of attempt that the circumstances under which the act was performed or the means employed or the act itself were such that the commission of the crime was not possible."

This instruction is nearly verbatim the language found in the attempt statute, K.S.A. 1991 Supp. 21-3301(b). DeHerrera, however, claims that because the committee responsible for criminal pattern instructions does not recommend a separate instruction on impossibility, it was error for the trial court to give one. See PIK Crim. 2d 55.02.

Again, DeHerrera did not object to this instruction at trial. We do not find the instruction to be clearly erroneous and, therefore, it does not constitute reversible error.

DeHerrera's final argument regarding jury instructions is based upon the trial court's instruction on communicating a terroristic threat. That instruction stated:

"Defendant is charged with the crime of Terroristic Threat. Defendant pleads not guilty. To establish this charge, each of the following claims must be proved. Defendant, unlawfully, willfully:

1. with intent to terrorize another, or *in wanton disregard of the risk of causing such terror*,
2. threatened to commit violence to and upon Kathy Davis,
3. this happened in Sedgwick County, Kansas, and on or about July 12, 1990." (Emphasis added.)

Although DeHerrera's attorney submitted a standard PIK instruction on terroristic threat, he did not object on the record before this instruction was read to the jury. Defense counsel, however, did object to the instruction in his motion for a new trial. DeHerrera claims that in adding the alternative element of "in wanton disregard of the risk of causing such terror" the trial court impermissibly added another theory under which DeHerrera could have been convicted. The alternative theory was not charged.

The State argues the jury instruction did not allege an additional crime. Instead, the instruction provided a different method of committing the crime alleged. The State further claims both methods instructed upon were supported by the evidence.

In *State v. Davis*, 247 Kan. 566, Syl. ¶ 2, 802 P.2d 541 (1990), we stated:

"When the information alleges one or more methods for commission of the crime, the general rule is that the instructions should be confined to the charges contained in the information and should not be broader or narrower than the information. Instructions given in violation of the rule, however, are not reversible error if the substantial rights of the defendant have not been prejudiced."

The PIK instruction on terroristic threat, PIK Crim. 2d 56.23, provides two possible instructions, one of which includes the complained-of language. The Complaint/Information charges DeHerrera "did then and there unlawfully, willfully communicate a threat to commit violence to Kathy Davis with the intent to terrorize another, to-wit: Kathy Davis."

We do not find DeHerrera was prejudiced by the language used in the terroristic threat instruction. The language is different from that found in the Complaint/Information, but DeHerrera was not misled as to the charges against him. Furthermore, the

evidence presented at trial supported DeHerrera's conviction on the charge of making a terroristic threat toward Kathy Davis.

## II.

DeHerrera argues the evidence was insufficient to sustain his conviction for attempted first-degree murder. More specifically, DeHerrera argues the evidence was insufficient to prove beyond a reasonable doubt he intended to commit premeditated murder.

The standard of review is well settled:

"On appeal of a criminal case, the standard in considering the sufficiency of the evidence is whether after a review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Peltier*, 249 Kan. 415, Syl. ¶ 2, 819 P.2d 628 (1991).

DeHerrera claims that had he intended to murder Bertha, he would have shot her with his .38 caliber pistol rather than stabbed her. DeHerrera further points out that none of the witnesses made any physical attempt to stop him from stabbing Bertha; it was his decision to quit. Although DeHerrera had told his son he wanted to shoot his wife, Rick admitted at trial he believed his father was "blowing off steam." DeHerrera contends the evidence supports a finding that he acted in the heat of passion, but does not prove his acts were premeditated.

Prior to the stabbing, DeHerrera had threatened to kill Bertha if she left him. DeHerrera had also told Rick and James Davis he intended to kill her. Even though he voluntarily stopped stabbing Bertha, DeHerrera told the people trying to stop her bleeding to let her die. It is uncontroverted that DeHerrera walked into Joan's Upholstery Shop and stabbed Bertha five times. Ultimately, her stab wounds were not life threatening; however, they easily could have been had he struck her heart, lungs, or the great vessels in the chest.

Looking at the evidence in the light most favorable to the prosecution, we find sufficient evidence to sustain DeHerrera's conviction for attempted first-degree murder.

## III.

The next issue raised by DeHerrera is whether the trial court abused its discretion in sentencing him and in refusing to grant

his motion for modification of sentence. The trial court sentenced DeHerrera to 14 years to life for attempted first-degree murder and 1 to 2 years for the terroristic threat conviction. The sentences were ordered to run concurrently. DeHerrera argues the trial court abused its discretion because the court did not follow the presentence investigation (PSI) report recommendation for a minimum sentence; that being 5 to 10 years. DeHerrera also contends the trial court did not follow the sentencing criteria in K.S.A. 21-4606.

K.S.A. 21-4606 requires the sentencing court to set a minimum term "consistent with the public safety, the needs of the defendant, and the seriousness of the defendant's crime." We have held:

"[I]t is the better practice, when the sentence exceeds the minimum, for the trial court, on the record, to make a detailed statement of the facts and factors considered by the court in imposing sentence. However, a trial court's failure to make such a detailed statement does not necessarily demonstrate an abuse of discretion; each case must be considered on its facts. [Citations omitted.] Also, it is a familiar rule that a sentence which is within the statutory limits will not be disturbed on appeal provided it is within the realm of discretion on the part of the trial court and not a result of partiality or prejudice." *State v. McGlothlin*, 242 Kan. 437, 438, 747 P.2d 1335 (1988).

The PSI report stated DeHerrera had 18 prior arrests, most of which had occurred between 1958 and 1967, while DeHerrera lived in Colorado. Between 1975 and 1988, while living in Wichita, DeHerrera had been convicted of driving while intoxicated, battery, solicitation for immoral purposes, and shoplifting. DeHerrera's criminal history consisted of eight misdemeanor convictions and one felony conviction. The PSI report concludes with the court services officer's recommendation: "[DeHerrera's] recent criminal record shows no indication that he is a threat to the safety of the public at large. Whether or not he will be dangerous to the victim is a question perhaps only a psychiatric evaluation will answer. I recommend minimum sentence."

At the sentencing hearing, Bertha made the following statement:

"In the 16 years that I've known this man, he has never made any idle threats. And his threat to hunt me down and kill me until the day he dies, I truly believe he would hold to it, and I pray that you will give him the maximum sentence."

The court also permitted Kathy Davis to make a statement prior to the imposition of sentence. Kathy stated:

"Your Honor, I just wanted to say that as far as his idle threats, they are not idle. Every threat he ever made he kept. And if he gets out he will kill [Bertha] and then he'll come after me, and there's nothing going to stop him other than a long sentence in prison."

DeHerrera made the following statement on his own behalf:

"They found me guilty on [an] attempted murder but I didn't try to kill her and I'll still say that. The issue here is—and will always be—I was here for one thing; but the reason wasn't just that I went looking for her or anything. The thing was she took some things that didn't belong to her and it did make me mad.

"The whole issue here is greed. It wasn't love, it wasn't nothin' else, it was just greed. That's what brought us here. If it wasn't greed—for either one of us—that I did love my possessions and she loved hers and she took mine is why we're here. There's no other issue than that. It was just pure greed and deceit. That's all it was, Your Honor."

When pronouncing the sentence, the trial court referred to the fact that the statute requires "as long a term as needed." The sentencing judge believed DeHerrera had a strong obsession for controlling through fear. He stated DeHerrera would need intensive psychological treatment to help DeHerrera function outside of prison. The sentencing judge further stated DeHerrera was a danger to society even if he continued to be obsessed with punishing or controlling only one person, Bertha.

DeHerrera specifically objects to the following statement of the sentencing judge:

"When the parole is considered by the authorities and they ask for the judge's recommendation, I won't be here to give it. I don't know if Mr. DeHerrera can give up this compulsive determination to control what happens in the future by the same way he has had this compulsive determination to control up to the present."

This statement and the sentencing judge's imposed term of greater than the minimum, but less than the statutory maximum, do not show an abuse of discretion. DeHerrera was convicted of a violent crime and at the sentencing hearing showed no signs of remorse. Under the facts and circumstances, it cannot be said that no reasonable person would agree with DeHerrera's sentence. Thus, we find the trial court did not abuse its discretion

in sentencing him to 14 years to life for attempted first-degree murder.

DeHerrera moved for modification of sentence, which the trial court denied. DeHerrera argues the trial court did not give his motion the appropriate consideration because the court issued a "boiler plate journal entry." The journal entry, however, states the court considered, among other things, "the facts of the case; the Court's file; [and] all available reports by the professionals to include that from the staff of the State Reception and Diagnostic Center . . . ." The SRDC report, prepared after the sentencing hearing, noted DeHerrera "minimized his difficulties and blamed others, rationalizing his behavior." The SRDC report further stated DeHerrera "tends to disregard the rights of others in order to satisfy his own needs and does not see himself at fault for actions or injuries inflicted upon the victim." The SRDC report recommended DeHerrera remain incarcerated and did not recommend any downward modification of his sentence.

We hold the trial court did not abuse its discretion by denying DeHerrera's motion for modification of sentence.

Next, DeHerrera argues the trial court erred in ordering restitution as well as incarceration. At the sentencing hearing, the trial court ordered DeHerrera to pay restitution for Bertha's medical expenses not covered by insurance and the cost of psychological counseling for Bertha and their children. Although restitution was not included in the court's journal entry, when discussing restitution at the sentencing hearing, the judge stated: "[T]his is going to be a judgment of the Court. The orders are made now." DeHerrera's attorney asked the trial court to clarify whether it was ordering restitution and reparations at that time. The trial court responded, "[C]ertainly."

The sentencing judge explained he believed incarceration and restitution were appropriate because there was evidence DeHerrera had cash and assets with which to pay the restitution. Although the record is not clear, DeHerrera apparently had approximately $1,800 in cash in his pocket at the time of his arrest. The trial court was going to retain custody of this money until it was determined no judgment applied to it. At the time of sentencing, Bertha and DeHerrera's divorce proceeding was pending.

The State contends the trial court ordered restitution was due and owing in the future, but only ordered the costs of the action to be paid immediately. We find the record does not support the State's argument that the trial court found DeHerrera owed restitution and "advised the Secretary of Corrections' Board of Pardon and Parole of that when the defendant is eligible for parole, payment of restitution should be required as a condition of release."

K.S.A. 1991 Supp. 21-4603 lists the authorized dispositions for anyone found guilty of a crime and states in part:

"(2) Except as provided in subsection (3), whenever any person has been found guilty of a crime, the court may adjudge any of the following:

(a) Commit the defendant to the custody of the secretary of corrections . . .

. . . .

(c) release the defendant on probation subject to such conditions as the court may deem appropriate, including orders requiring full or partial restitution. . . .

(d) suspend the imposition of the sentence subject to such conditions as the court may deem appropriate, including orders requiring full or partial restitution. . . .

. . . .

(i) impose any appropriate combination of (a), (b), (c), (d), (e), (f), (g) or (h)."

This court, in State v. McNaught, 238 Kan. 567, 588, 713 P.2d 457 (1986), construed 21-4603(2) to mean "the trial court may not sentence a defendant to imprisonment in an institution and also require the defendant to pay restitution." Quoting State v. Chilcote, 7 Kan. App. 2d 685, 647 P.2d 1349, rev. denied 231 Kan. 801 (1982), we stated:

" 'The use of the word "appropriate" implies that the combination of penalties under the statute should be harmonious. Thus the trial court may not impose imprisonment, which mandates incarceration, with either probation or suspension of sentence, because to do so would be to decree mutually exclusive penalties. As we construe the statute, restitution may only be ordered in conjunction with probation or suspended sentence.' " (Emphasis added.) 238 Kan. 588-89.

This rule was further developed in State v. Bowers, 239 Kan. 417, 428, 721 P.2d 268 (1986), in which we stated: "If the sentencing court chooses to set restitution, it should clearly specify in the journal entry that the amount and manner of restitution

being ordered is not immediate, but said information is being provided for the benefit of the Kansas [Parole Board]." In 1986, the legislature amended K.S.A. 21-4603(2) to provide: "If the court commits the defendant to the custody of the secretary of corrections or to jail, the court may specify in its order the amount of restitution to be paid and the person to whom it shall be paid if restitution is later ordered as a condition of parole or conditional release." L. 1986, ch. 136, § 1; K.S.A. 1991 Supp. 21-4603(2)(i).

We hold the trial court erred in ordering DeHerrera to pay restitution while also sentencing him to incarceration. Neither K.S.A. 1991 Supp. 21-4603(2) nor *McNaught* support the trial court's contention that a defendant can be ordered to pay restitution while incarcerated as long as there is a showing the defendant is able to pay. Our holding regarding the immediate payment of restitution in no way affects the well settled rule of law that upon conviction a defendant shall be ordered to pay court costs. K.S.A. 22-3801(a); *State v. Dean*, 12 Kan. App. 2d 321, 323, 743 P.2d 98, *rev. denied* 242 Kan. 904 (1987).

The judgment is affirmed except for the order to pay restitution, which is reversed.