(903 P.2d 764)
No. 71,662

STATE OF KANSAS, *Appellee*, v. THOMAS L. LIKINS, JR., *Appellant*.

Opinion filed August 4, 1995.

*Michael J. Helvey*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Ty Kaufman*, county attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before PIERRON, P.J., RULON, J., and HERBERT W. WALTON, District Judge Retired, assigned.

RULON, J.: Defendant Thomas L. Likins, Jr., appeals from his jury conviction of felony possession of marijuana, K.S.A. 65-4127b, and possession of drug paraphernalia, K.S.A. 65-4152. Defendant

principally argues the district court erred in denying his motion to suppress evidence. Other issues raised by defendant include claims the court erred when admitting evidence of prior crimes and ordering defendant to pay a K.B.I. lab fee. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

The facts of this case are essentially undisputed and are as follows:

In May 1993, Lt. Shaw of the McPherson police department observed two men exiting a parked car in a residential area of McPherson. He observed both men walking away from the parked vehicle. Shaw subsequently stopped the two men and asked for identification. Eventually, Shaw learned that one of the men (defendant) was a parole violator, so Shaw arrested him. The other man with defendant was ultimately identified as the defendant's brother, Larry Likins.

Shaw ran a computer check on the parked vehicle and determined it was owned by Cade Spencer, who lived in Wichita. When asked about the car, defendant said the car belonged to his roommate, Cade Spencer. When Shaw asked defendant whether there were any drugs or contraband in the vehicle, defendant indicated there were none. Shaw then asked for permission to search the vehicle. Defendant said he could not give permission because he did not own the vehicle. Shaw then took the keys from defendant and locked the vehicle.

Subsequently, Shaw telephoned Spencer at his job in Wichita. He told Spencer that the vehicle needed to be moved and that if he could not come and pick it up, Shaw would have to have it towed or, with Spencer's permission, an officer could drive it to the local police station. According to Shaw, Spencer said he could not get off work until later and gave Shaw permission to have an officer move the car.

Shaw also asked Spencer for permission to search the car. According to Shaw, Spencer was advised he did not have to give his permission but if he declined, Shaw would have to get a search warrant. When Shaw asked Spencer for permission to search his

car, Shaw did not believe there were sufficient grounds to obtain a warrant.

According to Spencer, Shaw contacted him at work, informed him defendant had been arrested, and told him the car had been abandoned and needed to be moved. Spencer said he was told he could either permit an officer to drive the car back to the police station or the vehicle would be towed at Spencer's expense. Spencer said he wanted to cooperate and, because he did not have other transportation, told Shaw to just do whatever was necessary because he needed the car back.

During the search, marijuana and other contraband were found. Subsequently, Shaw informed both men of their *Miranda* rights. Larry said he was unaware of the marijuana until defendant was arrested. Defendant invoked his right to remain silent.

When defendant refused to give a statement, Shaw told Larry that because defendant was not talking, Shaw had a problem with Larry's story. Larry asked, and was given permission, to talk to defendant. After Larry talked to defendant, he told Shaw that defendant wanted to speak to him. Shaw explained to defendant that he had a right to an attorney and did not have to speak to him. Defendant waived his right to a lawyer and confessed to possessing the marijuana and drug paraphernalia.

Prior to trial, defendant moved to have his confession suppressed because the car was illegally seized and searched in violation of defendant's Fourth Amendment rights. Defendant further claimed the owner's consent to search the vehicle was not voluntary because Spencer was coerced into giving permission. Further, defendant claimed his confession was not voluntary because of police threats to charge his brother Larry with arrest if defendant did not confess. According to defendant, his confession and the evidence of the search were "fruit of the poisonous tree" and inadmissible.

After hearing testimony and arguments of counsel, the district court denied the motion to suppress essentially because it believed defendant had abandoned any privacy interest in the car and thus defendant could not complain when the owner was contacted and gave his permission to search.

Defendant was subsequently convicted. Because defendant had a prior conviction for possession of marijuana, the district court found defendant's second conviction of possession of marijuana was a class D felony rather than a class A misdemeanor.

## MOTION TO SUPPRESS EVIDENCE

Normally, great deference is given by the appellate courts to a district court's findings of fact when reviewing the court's decision regarding a motion to suppress. However, the ultimate determination is a legal question requiring an independent appellate determination. *State v. Vandiver*, 257 Kan. 53, Syl. ¶ 6, 891 P.2d 350 (1995).

Here, the following facts are not in dispute: Defendant had borrowed Spencer's car with permission. When stopped and arrested, defendant still had possession of the keys to the car and thus arguably continued to have control of the car. When Shaw asked for permission to search the car, defendant declined because the car was not defendant's. The car was not searched but was secured. No contraband was in plain view. Shaw then contacted the owner, Spencer, who gave him permission to search the car. The parties agree this was not a search incident to a lawful arrest.

In Kansas, when a person is driving a vehicle with the consent of the owner at the time of arrest, that person has a sufficient possessory interest in the vehicle to assert his or her constitutional right against an unreasonable search and seizure. *State v. Boster*, 217 Kan. 618, Syl. ¶ 2, 539 P.2d 294 (1975), rev'd in part on other grounds *State v. Fortune*, 236 Kan. 248, 258, 689 P.2d 1196 (1984). For example, in *State v. Sanders*, 5 Kan. App. 2d 189, 614 P.2d 998 (1980), the defendant was driving a car that had been loaned to the passenger by the owner of the vehicle, and the passenger in turn permitted the defendant to drive. This court concluded the defendant stood in place of the owner of the car and was entitled to the same expectation of privacy as would have been extended to the owner. Because Sanders had the keys and thus control over the car, he had the ability to exclude anyone *except the owner* or the person who gave him permission to drive the car. See 5 Kan. App. 2d at 194-95.

In this case, defendant arguably had a possessory interest in the vehicle. Even though defendant was over a block away from the car when arrested, the car was legally parked and defendant retained the keys. There is no indication that, prior to defendant's arrest, he planned to leave the car in McPherson.

Here, the district court essentially concluded that because defendant said he could not give permission to search the car, defendant had abandoned any possessory interest in the vehicle and thus had no expectation of privacy.

In *State v. Grissom*, 251 Kan. 851, 902, 840 P.2d 1142 (1992), our Supreme Court said that it has long been the law in Kansas that an individual who abandons property is not permitted to contest the legality of the search and seizure of the property. The *Grissom* court, quoting *State v. Brunson*, 13 Kan. App. 2d 384, 771 P.2d 938, *rev. denied* 245 Kan. 786 (1989) said:

" 'The warrantless search of an automobile which has been abandoned by its owner will violate the Fourth Amendment only if the defendant manifested a subjective expectation of privacy in the automobile and its contents that society accepts as objectively reasonable.'

" 'One's personal right to Fourth Amendment protection of property against search and seizure is lost when that property is abandoned, absent a manifested reasonable expectation of privacy.'

" '[I]n determining the continued existence of Fourth Amendment property rights, whether the facts reveal a complete abandonment of an automobile in the strict property rights sense is not the issue. The issue is whether, by any good, sound, ordinary sense standard, the defendant abandoned any reasonable expectation to a continuation of his personal right against having his car searched.' 13 Kan. App. 2d 384, Syl. ¶¶ 3, 4, 5." 251 Kan. at 903.

The *Grissom* court held that the defendant, who had parked a vehicle in the lot of a private apartment complex without authorization, slept across the street in a field, and had not attempted to intervene when the vehicle was towed or had not gone to the police station to claim the car and had subsequently stolen a different car to avoid arrest, had effectively abandoned the car and did not have an objectively reasonable expectation of privacy in the seized car. 251 Kan. at 905-07.

Similarly, the *Brunson* court concluded that an individual who left his automobile on a golf course with the engine running, the

car in gear, and the lights on in an attempt to evade police who were in hot pursuit had abandoned the car and did not have a reasonable expectation of privacy. 13 Kan. App. 2d at 390-91.

This case is factually distinguishable from *Grissom* and *Brunson*. First, unlike *Brunson*, defendant was not being pursued and did not leave the car illegally parked with the motor running and lights on and did not attempt to elude police. Unlike *Grissom*, defendant legally parked the car on a public street and retained the keys. Shaw made no attempt to move the car so defendant had no reason to protest. Defendant's sole act was to state the car was not his; therefore, he could not give permission to search another's car.

For criminal law purposes, the concept of abandonment of property has two components: (1) A defendant must intend to abandon the property; and (2) the defendant must freely decide to abandon the property and the decision must not merely be the product of police misconduct. "Thus, abandonment is a question of intent and exists only if property has been voluntarily discarded under circumstances indicating no further expectation of privacy." 68 Am. Jur. 2d, Searches and Seizures § 6, p. 645. Further, we cannot assume that a disclaimer of ownership always constitutes an abandonment for Fourth Amendment purposes. 1 LaFave, Search and Seizure § 2.6(b), p. 474 (2d ed. 1987).

"While abandoned property is always subject to seizure ° ° °, proof of intent to discard and abandon must be shown. ° ° ° Mere denial of ownership is not proof of an intent to abandon. . . . There is a great deal of difference between denial of ownership of property on a public street where no possession is claimed or indicated and denial of ownership of property in a car where possession is conceded, although ownership denied." 1 LaFave, Search and Seizure § 2.6(c), p. 475 (quoting *People v. Cameron*, 73 Misc. 2d 790, 342 N.Y.S.2d 773 [1973]).

Under the specific facts shown here, defendant had not abandoned his expectation of privacy in the seized car, but merely indicated he did not own it and did not believe he had authority to give permission for a search. Defendant was not fleeing from police, and there is no evidence he was trying to hide any evidence from police. Therefore, the district court erred when concluding defendant had abandoned the car and thus lacked standing to ob-

ject to the search. However, this does not end our discussion of this issue.

If a defendant has a sufficient possessory interest and expectation of privacy in a vehicle, he or she can exclude anyone from the car, *except the owner*. See *State v. Sanders*, 5 Kan. App. 2d at 195. After defendant's statement that he could not authorize the search, the police secured the car and took defendant to the police station. The owner of the vehicle ultimately gave permission to search the car. Under the facts shown, defendant's right to preclude a search is inferior to that of the owner of the car, so he has no standing to challenge the search if the consent of the owner was given freely and voluntarily. See *United States v. Ruigomez*, 702 F.2d 61 (5th Cir. 1983) (Passenger in car did not have standing to challenge consent to search given by owner. A person who has joint control of an automobile may give a valid consent to search.). However, "[c]onsent, even when applied to a third party, must be consensual, that is, uncoerced." 702 F.2d at 65.

Defendant argues that the police misled Spencer into believing he had no choice but to allow the police to drive the car or to have it towed at the owner's expense. Specifically, defendant contends that Spencer's consent to have the car taken to the police station was coerced. Further, defendant contends that Spencer's consent to search was coerced because Shaw intimated that if consent was not given, Shaw would attempt to obtain a search warrant and obtaining the warrant would take more time.

The State argues that defendant did not have standing to challenge the search and, therefore, whether Spencer's consent was freely and voluntarily given is immaterial. However, our Supreme Court has held:

"One of the exceptions to the requirement of a search warrant is a search made with consent or waiver voluntarily, intelligently and knowingly given. [Citations omitted.] The existence and voluntariness of a consent to search and seizure is a question of fact to be decided in light of the attendant circumstances by the trier of fact. It will not be overturned on appeal unless clearly erroneous. The quantum of evidence necessary to prove voluntariness has been held to be by a preponderance. [Citations omitted.]" *State v. Pearson*, 234 Kan. 906, 920, 678 P.2d 605 (1984).

"In determining whether consent was voluntary, the trial court should consider whether the individual was threatened or coerced, and whether he was informed of his rights. *State v. Nicholson*, 225 Kan. 418, 423, 590 P.2d 1069 (1979)." *State v. Ruden*, 245 Kan. 95, 105, 774 P.2d 972 (1989).

Although requested to do so, the district court did not make specific findings on the voluntariness of Spencer's consent to search. The court only concluded that defendant had abandoned the vehicle and, therefore, lacked standing to object to the search.

Our review of the record shows Spencer and Shaw disagree on the controlling facts surrounding Spencer's consent to search the car.

Whether the State met its burden of proving voluntary consent by a preponderance of the evidence depends upon the credibility of the witnesses. The district court's observations of Shaw and Spencer during testimony at the motion to suppress hearing is essential to deciding if the State met its burden. "The appellate court cannot decide a question of fact that is based upon conflicting testimony which requires an assessment of the demeanor and credibility of the witnesses." *State v. Ruden*, 245 Kan. at 106.

Based on the above analysis, this case is remanded to the district court for findings of fact and conclusions of law on the voluntariness of Spencer's consent to search. If the consent was *not* voluntary, the search was illegal, and the contraband would necessarily need to be suppressed.

Although this case is to be remanded, other issues before this court require resolution.

## THE CONFESSION

Defendant argues that police threatened to arrest Larry if defendant did not confess to ownership of the seized contraband. According to defendant, his confession was rendered involuntary because it was the product of Shaw's threat to arrest his brother if defendant's confession was not forthcoming.

The record shows that Larry and defendant were advised of their rights before each was questioned. Shaw testified that he did not

threaten to arrest Larry if defendant did not admit the drugs were his. Larry testified otherwise.

On appeal, an appellate court will not reverse a determination that a confession was freely, voluntarily, and intelligently given if there is substantial competent evidence to support the determination. *State v. Lumbrera*, 257 Kan. 144, 161, 891 P.2d 1096 (1995).

"Under the Fourteenth Amendment due process voluntariness test, a case-by-case evaluation approach is employed to determine whether coercion was impermissibly used in obtaining a confession. Coercion in obtaining a confession from an accused can be mental as well as physical. In determining the voluntariness of a confession of crime, the question in each case is whether the defendant's will was overborne at the time of the confession; if so, the confession cannot be deemed the product of a rational intellect and a free will. [Citation omitted.]" *State v. Waugh*, 238 Kan. 537, 541, 712 P.2d 1243 (1986).

In *State v. Holloman*, 240 Kan. 589, 596-97, 731 P.2d 294 (1987), our Supreme Court concluded police comments that defendant's brother would be released from jail if defendant confessed, did not render the confession inadmissible. The *Holloman* court, quoting *State v. Churchill*, 231 Kan. 408, Syl. ¶ 1, 646 P.2d 1049 (1982), said:

" 'A confession induced by a promise of a collateral benefit, with no assurance of benefit to accused with respect to the crime under inquiry, is generally considered voluntary and admissible in evidence, unless the circumstances surrounding the promise of the collateral benefit were such as to render the confession untrustworthy or the promise could reasonably be calculated to produce a confession irrespective of its truth or falsity.' " 240 Kan. at 597.

The *Holloman* court held that, absent any promise of personal benefit or evidence that the circumstances surrounding the collateral benefit to the defendant's brother had the effect of rendering the confession untrustworthy, the confession need not be suppressed. 240 Kan. at 597.

"The first question for this court to determine is whether there is substantial competent evidence to support the district judge's finding that the confession was voluntary. In determining whether a confession is voluntary, a court is to look at the totality of the circumstances. The burden of proving that a confession or admission is admissible is on the prosecution, and the required proof is by a preponderance of the evidence. Factors bearing on the voluntariness of a state-

ment by an accused include the duration and manner of the interrogation; the ability of the accused on request to communicate with the outside world; the accused's age, intellect, and background; and the fairness of the officers in conducting the interrogation. The essential inquiry in determining the voluntariness of a statement is whether the statement was the product of the free and independent will of the accused. [Citation omitted.] When a trial court conducts a full hearing on the admissibility of an extrajudicial statement by an accused, determines the statement was freely and voluntarily given, and admits the statement into evidence at the trial, an appellate court accepts that determination if it is supported by substantial competent evidence. [Citation omitted.]" *State v. Morris*, 255 Kan. 964, 971, 880 P.2d 1244 (1994).

Under the facts shown here, there is no evidence that defendant's free will was overcome by any action taken by Shaw. Defendant was not told that Larry would *not* be arrested if defendant confessed. Defendant was allowed to speak to Larry in private without interference by police. Further, there is no indication Larry was in any way acting as an agent of the police. Therefore, we are satisfied there is substantial and competent evidence to support the court's finding that the defendant's confession was freely and voluntarily given.

## PRIOR CONVICTIONS

Defendant next argues the district court erred in admitting evidence of a prior conviction for possession of marijuana.

At trial, the State introduced into evidence a journal entry from Russell County showing that defendant had a prior misdemeanor conviction for possession of marijuana. Defendant objected to this evidence. The court ruled the evidence admissible.

"A ruling on the admissibility of other crimes evidence pursuant to K.S.A. 60-455 is within the discretion of the trial court. The trial court's ruling will not be interfered with on review unless that discretion was abused or unless the trial judge admitted evidence that clearly had no bearing on any of the issues." *State v. Searles*, 246 Kan. 567, Syl. ¶ 2, 793 P.2d 724 (1990). Discretion is abused when no reasonable person would adopt the position of the trial court. *State v. Maggard*, 16 Kan. App. 2d 743, 750, 829 P.2d 591, *rev. denied* 251 Kan. 941 (1992).

"When determining whether to admit evidence of a prior crime, the trial court must (1) determine it is relevant to prove one of the facts specified in the statute, (2) determine the fact is a disputed, material fact, and (3) balance the probative value of the prior crime or civil wrong evidence against its tendency to prejudice the jury." *State v. Blackmore*, 249 Kan. 668, Syl. ¶ 3, 822 P.2d 49 (1991).

The record shows that the district court found that the prior conviction tended to prove the element of intent to possess. Because there were two people in the car, the evidence was subject to two interpretations: first, that defendant knew the marijuana was in the car and, second, that defendant did not know. The court further found the challenged evidence had probative value that outweighed any prejudicial effect.

"Where illegal possession of drugs is charged, . . . intent may be the only issue. In that instance, the similarity of the prior offense to the crime charged is a key factor when determining whether that evidence is relevant." *State v. Graham*, 244 Kan. 194, 198, 768 P.2d 259 (1989). Further, "[a]lthough evidence of prior crimes is always prejudicial to some extent, this prejudice may be overbalanced by the probative value of the evidence on the crucial issues in the case." 244 Kan. at 199.

While a different court might have come to a different conclusion, there is no indication the district court here abused its discretion.

## THE ENHANCEMENT

Under K.S.A. 65-4127b(a), a second conviction for possession of marijuana is a class D felony. Defendant argues that the district court could not consider his prior conviction because the conviction was uncounseled.

At the sentencing hearing, the State introduced the journal entry of defendant's 1992 conviction in Russell County. The journal entry shows that defendant was advised of his right to counsel and voluntarily waived this right.

Defendant argues that there was insufficient evidence that he knowingly and voluntarily waived his right to counsel in the Russell County case and, consequently, the conviction must be presumed

uncounseled and cannot be used against him. We disagree. However, even if we determine the prior conviction was uncounseled, under the facts of this case the defendant is not entitled to relief.

The Kansas appellate courts have ruled that prior uncounseled DUI convictions could not be used to enhance a punishment under a habitual offender statute. See *State v. Priest*, 239 Kan. 681, 722 P.2d 576 (1986); *State v. Oehm*, 9 Kan. App. 2d 399, 680 P.2d 309 (1984). Both *Priest* and *Oehm* in part relied on *Baldasar v. Illinois*, 446 U.S. 222, 64 L. Ed. 2d 169, 100 S. Ct. 1585 (1980), which is generally understood to say that prior uncounseled misdemeanor convictions cannot be used to elevate a subsequent misdemeanor conviction to a felony conviction with a prison term. *Musick v. Kansas Dept. of Revenue*, 16 Kan. App. 2d 462, 467, 825 P.2d 531 (1992).

*Baldasar* was overruled by *Nichols v. United States*, 511 U.S. ___, 128 L. Ed. 2d 745, 114 S. Ct. 1921 (1994). The *Nichols* court held that the use of prior uncounseled misdemeanor convictions to enhance a defendant's sentence for a subsequent conviction did not violate the Sixth or the Fourteenth Amendments to the Constitution when the prior misdemeanor convictions did not result in the imposition of a prison sentence. 128 L. Ed. 2d at 755. *Nichols* returns the law to the position espoused by *Scott v. Illinois*, 440 U.S. 367, 59 L. Ed. 2d 383, 99 S. Ct. 1158 (1979).

Recently, our Supreme Court addressed this issue in *State v. Delacruz*, 258 Kan. 129, 899 P.2d 1042 (1995).

"We agree with the rationale expressed in *Nichols*. We conclude the use of an uncounseled misdemeanor conviction that does not result in incarceration may be used in determining a defendant's criminal history under the Kansas Sentencing Guidelines even though it has the effect of enhancing his or her sentence under the guidelines. See *Nichols v. United States*, 511 U.S. ___, 128 L. Ed. 2d 745. Prior uncounseled misdemeanor convictions under *Scott* [*v. Illinois*, 440 U.S. 367] are constitutional where no jail time is imposed. If such convictions are constitutional, those convictions should and do remain constitutional in subsequent proceedings under the KSGA. Moreover, municipal judges in Kansas are trained and tested by the Kansas Supreme Court in its supervisory responsibilities over the Kansas Judicial Branch of government. The factory analogy hardly seems appropriate when referring to Kansas municipal courts. While the uncounseled misdemeanor is used to enhance the present sentence, the sentence imposed does not increase the penalty for that misdemeanor, and the defendant is being pun-

ished based on his current charge—a charge and proceeding where he is represented by counsel." 258 Kan. at 135-36.

However, in this case the record contains a signed form waiving defendant's right to counsel. Defendant argues that the form and the notation in the journal entry from the Russell County case, showing he waived counsel, are not sufficient to show he knowingly and intelligently waived the right to counsel. Without a record of the guilty plea in the prior case, defendant argues it is impossible to determine if he was fully aware of the effects of the waiver at the time. See *State v. Daniels*, 2 Kan. App. 2d 603, 605-06, 586 P.2d 50 (1987).

In *State v. Pierson*, 222 Kan. 498, 504, 565 P.2d 270, *cert. denied* 434 U.S. 868, (1977), our Supreme Court considered a petitioner's argument that a prior conviction resulting from a guilty plea could not be used to enhance his current conviction. Pierson argued that the State had failed to affirmatively show that his prior guilty plea was obtained pursuant to the requirements of *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969), and *Henderson v. Morgan*, 426 U.S. 637, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976).

The *Pierson* court noted that *Boykin* and *Henderson* were direct attacks upon the challenged pleas and neither involved collateral attacks upon prior convictions used by a sentencing court to enhance punishment. The court ruled that in a collateral attack, every reasonable presumption in favor of the validity of the judgment should be indulged where there is nothing in the record to support the allegations of irregularity. 222 Kan. at 504.

Defendant's attack here is a collateral attack on his prior guilty plea. The record affirmatively shows defendant was advised of his right to counsel and waived that right. There is no evidence in the record suggesting any irregularity with the prior plea. Defendant's contention that his prior conviction is infirm is groundless.

## THE K.B.I. LAB FEE

Defendant's final argument is that the sentencing court erred in requiring him to pay the K.B.I. lab fee because the authorizing

statute was not in effect in May 1993 when the crime was committed.

Effective July 1, 1993, K.S.A. 28-176 requires a sentencing court to assess a court cost of $150 in any conviction for an offense listed in chapters 21 or 65 of the Kansas statutes if forensic science or lab work is necessary.

Under K.S.A. 22-3801, if a defendant is convicted in a criminal case, costs shall be taxed against the defendant. The lab fee set forth in K.S.A. 28-176 is logically part of the cost of a criminal trial where forensic testing is necessary. The law is well settled that court costs *are not* restitution and may be imposed along with incarceration. See *State v. DeHerrera*, 251 Kan. 143, 155, 834 P.2d 918 (1992).

Further, we believe K.S.A. 28-176 is procedural rather than substantive in that such provisions do not prescribe punishment or affect the defendant's substantial rights. As such:

"Regarding retroactivity, the general rule of statutory construction is that a statute will operate prospectively unless its language clearly indicates the legislature intended that it operate retrospectively. This rule is modified where the statutory change is merely procedural or remedial in nature and does not prejudicially affect the substantive rights of the parties. The prescription of a punishment for a criminal act is substantive, not procedural, law. [Citation omitted.]" *Chiles v. State*, 254 Kan. 888, 896, 869 P.2d 707, *cert. denied* 130 L. Ed. 2d 88 (1994).

Because K.S.A. 28-176 is procedural, there was no violation of the prohibition against *ex post facto* laws in imposing the lab cost on defendant.

We reverse the district court's finding that defendant abandoned his expectation of privacy in the seized vehicle and remand for findings of fact and conclusions of law on whether Spencer's consent to search the vehicle was voluntary. We affirm on all other issues presented in this appeal.

Affirmed in part, reversed in part, and remanded.